Palmer *v.* Oakley.

## THOMAS PALMER AND THREE OTHERS *v.* THOMAS J. OAK- LEY.

It is not necessary that the guardianship bond, required by R. S. 1827, p. 59, § 5, should be *executed* by the guardian; it is sufficient if *a* bond, with sufficient securities, is given.

*It seems* that where a married woman, appointed guardian, unites with her sureties in the guardianship bond, the bond will be good, notwithstanding her incompetency to execute it.

The giving of the guardianship bond, under R. S. 1827, p. 59, § 5, is not a condition precedent to the execution of the trust of guardian.

*It seems* that the decree of a probate court, appointing a *feme covert* guardian, who was incompetent to execute the trust on account of the coverture, would bind until reversed; and the acts of such guardian would be valid.

Both at the common law, and under the statute of 1827, (R. S. 1827, p. 57,) a married woman is competent to be a guardian, with the assent of her husband; but not without such assent.

*It seems,* that letters of guardianship granted to a wife, without the husband's assent, would be *voidable* merely; not *void*.

The husband's assent may be presumed from his joining with his wife in the bond which R. S. 1827, p. 88, § 2, requires a guardian to give, before sale of the ward's real estate.

*It seems* that where a *feme covert* takes upon herself the office of guardian, during coverture, it will be presumed that it is with the husband's assent, unless his dissent expressly appears.

R. S. 1827, p. 57, § 1, defines, and limits to the cases therein specified, the jurisdiction of the probate court over the appointment of guardians for minors, conferred in general terms by R. S. 1827, p. 55, § 1.

Under these statutes, the probate court has no power to *appoint* a guardian for a minor over fourteen, and within the territory, without first *citing* him to appear and choose his own guardian; *aliter*, if the minor is under fourteen.

And an *ex parte* application, representing that the minor is under fourteen, will not confer the jurisdiction to *appoint*, without citation, if, in fact, the minor is over that age.

If, however, upon a hearing, after citation, the court find the minor to be under fourteen, and appoint a guardian for him as such, *it seems* that the decree will be valid until reversed, even though he was over that age.

But a decree of the probate court, appointing a guardian for a minor, who is over fourteen, without citation, is *void*, for want of jurisdiction; and a sale of land, by such guardian, will not divest the title of the minor.

Where the decree appeared, on its face, to have been made upon an application representing the minor to be under fourteen, and did not show citation of the minor, *it was held*, that it might be impeached, in a collateral action, by evidence showing that the minor was, at the time, over fourteen.

*It seems*, that in support of such decree, citation might be shown by evidence *aliunde*.

*Held*, also, that such decree was valid until impeached by evidence showing want of jurisdiction, although it did not show, on its face, any formal finding of the fact that the minor was under fourteen.

A *feme covert*, who is guardian, can convey the real estate of her ward, without her husband joining in the deed.

Non-compliance, by a guardian, with the requirements of the statute relative to the notice to be given of the sale of real estate of the ward, under license of the probate court, will not invalidate the title of a *bona fide* purchaser.

EJECTMENT, brought by Thomas Palmer and three others, against Thomas J. Oakley, to recover lot number 6, in section number 4, in the city of Detroit.—Plea the general issue.

The cause was tried at the November term, 1845, of the circuit court, before the Hon. D. GOODWIN, Presiding Judge.

Both parties derived title from John Palmer, who died seized of the premises in 1826.

The plaintiffs were his children and heirs at law, and as such claimed each one sixth (in all four-sixths) of the premises.

The defendant claimed through a sale made February 4th, 1832, in pursuance of a decree of the probate court for Wayne county, by one Archange Simmons, as guardian for the plaintiffs, who were then minors.   Said Arch-

ange was the mother of the plaintiffs, and widow of John Palmer.

The controversy was, as to whether the decree of the probate court appointing said Archange guardian, and the subsequent proceedings, which resulted in the sale, were valid, and the sale conveyed a good title to the purchaser.

The statutes applicable to these proceedings were the following, viz:

" *An Act*" (of April 12, 1827,) "*for establishing Courts of Probate.*"

" Sec. 1. *Be it enacted by the Legislative Council of the Territory of Michigan*, That a court of probate shall be held in each of the several counties in this territory, and there shall be some able and learned person appointed in each of the said counties, as judge of said courts, respectively, for taking the probate of wills, and granting administration on the estates of persons deceased, having been inhabitants of, or residents in the same county, at the time of their decease; *for appointing guardians to minors*, idiots, and distracted persons; for examining and allowing the accounts of executors, administrators, and *guardians*; and for such other matters as the laws of this territory do or may direct."

Section 2, of the same act, provided for the appointment of a register, whose duty, among other things, was to record the orders and decrees of the court of probate, and have custody of the papers, seal, &c. It also confers authority upon the courts of probate to punish for contempts. R. S. 1827, p. 55.

" *An Act*" (of April 12th 1827,) *empowering the Judge of Probate to appoint guardians to minors and others.*

Sec. 1. *Be it enacted*, That the judge of probate in each county, respectively, when and so often as there shall be occasion, be, and hereby is, empowered to *allow* of guar-

dians, that shall be chosen by minors of fourteen years of age, and to *appoint* guardians for such as shall be within or under that age, *taking sufficient security* of all such guardians for the faithful discharge of their trust, and to account, either with the judge, or minor, when such minor shall arrive at the age of twenty-one years, or at such other time as the judge, upon complaint made to him, shall direct; and when any minor, above the age of fourteen years, shall be cited by the judge of probate to choose a guardian, and such minor shall refuse or neglect to appear, or, when appearing, shall refuse to choose a guardian, or any guardian chosen by such minor shall be unable to give sufficient security, or shall refuse the trust, or when any minor above the age of fourteen years shall be without this territory, in every such case, the judge of probate shall have the same power to appoint a guardian, as though such minor were under the age of fourteen years: *Provided nevertheless,* That when a minor above the age of fourteen years, living more than ten miles distant from the dwelling house of the judge of probate, shall choose a guardian, such minor may have the choice certified to the judge, by any justice of the peace of the same county, which choice, so certifed, shall be deemed as good and valid as if done in the said judge's presence.

"Sec. 5. That the guardian or guardians appointed as aforesaid, shall *give bond* to the judge of probate for the time being, in a reasonable sum, *with sufficient securities,* for the faithful discharge of the trust reposed in them, and more especially for the rendering a just and true account of their guardianship, when, and so often as they shall be thereunto required." R. S. 1827, pp. 57, '9.

"*An act*" (of April 12, 1827,) "*directing the settlement of the estates of deceased persons and for the conveyance of real estate in certain cases.*"

Sec. 1. Authorized the Supreme and County Courts, in

certain cases, to license any executor and administrator to sell so much of the real estate of the deceased as might be necessary for the payment of his debts, and empowered such executor or administrator, on sale under such license, to execute a conveyance of the premises sold, which instrument should make as good a title to the purchaser, as the testator or intestate in his life time could have given : "*Provided always,* That the executor or administrator, before sale be made as aforesaid, give *thirty days'* public notice, *by posting up notifications of such sale,* in the township where the lands lie, as well as where the deceased person last dwelt, and in the two next adjoining townships, and also in the county town," &c.

"Sec. 2. And whereas, by the partial sale of real estates for the payment of debts or legacies, as aforesaid, it often happens that the remainder thereof is much injured : *Be it therefore enacted,* That whenever it shall be necessary that executors and administrators shall be empowered to sell some part of the real estate of testators or intestates, *or for guardians to sell some part of the real estate of minors,* or persons non compos mentis," &c., " and by such partial sale the residue would be greatly injured, and the same shall be represented and made to appear to either of the aforesaid courts, on petition and declaration, filed and duly proved therein by the said executors, administrators *or guardians,* the aforesaid courts respectively may authorize and empower said executors, administrators, *or guardians,* to sell and convey the whole, or so much of said real estates, as shall be most for the interests and benefit of the parties concerned therein, at public auction, and good and sufficient deeds of conveyance to make and execute; which deed or deeds, when duly acknowledged, and recorded in the registry of deeds for the county where the real estate lies, shall make a complete and legal title, in fee, to the purchaser or purchasers thereof :

"*Provided*, The said executors, administrators, or guardians, give thirty days' public notice of such intended sale, *in manner and form herein before prescribed :*

"*And provided also*, That they first *give* bonds, *with sufficient sureties*, to the judge of probate for the county where the deceased testator or intestate last dwelt, and his estate was inventoried, that he or she will observe the rules and directions of law for the sale of real estate by executors or administrators; and the proceeds of such sale, after the payment of just debts, legacies, taxes, *and just debts for the support of minors*, and other legal expenses and incidental charges, shall be put on interest, on good securities, and that the same shall be disposed of agreeably to the rules of law.

"Sec. 5. That when it shall fully appear to either of the courts aforesaid, by petition and representation of the friends or guardians of minors, interested in the real estate of any deceased testator or intestate, that it would be for the benefit of such minors, or persons non compos mentis, that their interest should be disposed of, and the proceeds thereof be put and secured to them, on interest, the said court, on full examination, on oath, of the petitioner, or otherwise, may authorize some suitable person to sell and convey such estate, or any part theref, by deed duly acknowledged and recorded in the registry of deeds, as aforesaid :

"*Provided*, such person or persons first *give* bond, with sufficient sureties, to the judge of probate of the county where the said deceased person last dwelt, *to observe the rules and directions of law in the sale of real estate by executors and administrators*, in the first enacting clause herein prescribed, and to account for, and make payment of the proceeds of said sale, agreeably to the rules of law," &c. R. S. 1827, pp. 87, 88, 90.

*An act of September* 23, 1829, enacted, " That the judges

of the probate courts respectively, in the several counties within this territory, shall have the same authority to empower and license any executor, administrator, or guardian of any minor, idiot, *non compos*, or lunatic person, to make sale of all, or any part of the houses, lands or tenements of any deceased person, or of any minor, idiot, *non-compos*, or lunatic person, as the supreme, circuit, or county courts now have, or shall hereafter have," &c. R. S. 1833, p. 323.

*Act of July* 27, 1818.—" And whereas, executors and administrators, upon their obtaining license to sell real estate for the payment of debts or legacies, are by law directed, before sale made, to give thirty days' notice, by posting up notifications of such sale in the town or plantation where the lands lie, as well as where the deceased person last dwelt, and in the two adjacent towns, but no particular method is provided for perpetuating the evidence that such notice was given, by reason whereof disputes may arise, respecting the legality of such sales : therefore,

" Sec. 6. Be it further enacted, That the affidavit of the executor or administrator, or the affidavit of such person or persons as may be by them employed to post up such notifications, taken before the probate court, where such executor or administrator derived his authority to administer, within seven months next following the sale of the real estate, and there filed and recorded, together with one of the original advertisements of the time, place, and estate to be sold, or a copy of such advertisement, are hereby declared to be one mode of perpetuating the evidence that such notice was given, and also to make the originals or copies thereof admissible evidence, in any court of law ; and when the person employed by such executor or administrator to post up such notifications, resides more than ten miles distance from such probate

office, his deposition respecting that matter, taken before a justice of the peace, and filed in such probate court, within the seven months aforesaid, shall have the same force and effect as if the same was taken before such probate court; and the printing a notification, three weeks successively, in such gazette or newspaper as the court who may authorize the sale, shall order or direct, shall be deemed equivalent to the posting up of notifications as aforesaid.

"Sec. 7. And be it further enacted, That *guardians* and others, who, upon obtaining a license for the sale of real estate, are or shall be directed to give public notice, before sale be made, are hereby authorized to perpetuate the evidence that such notice was given, in the probate court, where the guardian or other person selling is directed to account for the proceeds arising from the sale, in the same way and manner herein before provided for executors and administrators." R. S. 1827, pp. 77, '8.

"*Act*" (of April 12, 1827,) "*directing the descent of intestate estates,*" &c.—" Sec. 18. That whereas it sometimes happens that, for want of prudent management in executors, administrators, or *guardians,* who are empowered to sell real estates, such estates are disposed of below their true value, to the great injury of the heirs and creditors; therefore, every executor, administrator or *guardian,* who may obtain a legal order for selling real estate, shall, previous to the sale, before the judge of probate or some justice of the peace, take the following oath : ' I, A. B. do solemnly swear, that in disposing of the estate lately belonging to ——, now deceased, I will use my best skill and judgment, in fixing on the time and place of sale ; and that I will exert my utmost endeavors to dispose of the same, in such manner as will produce the greatest advantage to all persons interested therein, and that without any sinister views whatever.' And the said executor, ad-

ministrator, or guardian, shall return to the judge of probate a certificate of the same under the hand of the justice before whom the oath was taken." R. S. 1827, p. 71.

The decree of the probate court appointing Archange Simmons guardian of the plaintiffs, &c., as of record, was as follows :

"At an adjourned session of the court of probate for the county of Wayne, held at" &c., "on Monday the 28th day of February, A. D. 1831. Present: *Jos. W. Torry*, Judge of Probate, *R. S. Rice*, Register.

"In the matter of the estate of the ⎱
minor heirs of John Palmer, deceased. ⎰

"Upon the application Archange Simmons, late Palmer, and widow of the deceased John Palmer, to be appointed guardian to *Thomas*, Oliver Perry, Ruth Ann, and Mary Ann Palmer, *minors under the age of fourteen years*, and children of said John Palmer, deceased ;

"It is ordered, adjudged and decreed, that the aforesaid application be, and it is hereby granted : And that the said Archange give a bond with two sureties in the sum of fifteen hundred dollars :

"And whereas, John Hale and Robert Abbott, Esq. were offered as sureties aforesaid, It is ordered and decreed, that they, the said Hale and Abbott be, and are hereby approved as such."

On the same day, the guardianship bond required by R. S. 1827, p. 59, § 5 (ante p. 433, § 5) was filed and approved, executed by said Archange, (her husband not joining therein) and by said Hale and Abott.

On the same day, also, said Archange presented an account as guardian for said minors, duly verified, and a petition representing that it would be for the benefit of the minors, that their interest in certain real estate therein described, (being the same premises in controversy in this suit) should be sold, and the proceeds thereof put at in-

terest, for the purpose of furnishing means for their support, and praying that she might be licensed to sell the same &c.; whereupon the court made the following order.

" *Ordered*, that the consideration of said account and petition be, and is hereby continued to the 4th day of April next, and that notice of the same be published in a newspaper published in the city," &c.

On the said 4th day of April, 1831, proof that the notice required by the foregoing order had been given, having been filed, the probate court made the following further order.

" In the matter of the estate of the }
minor heirs of John Palmer, deceased. }

" Upon the filing of the notice, as published in a newspaper, pursuant to the order of the court on Monday, the 28th day of February last, upon the oath of Archange Simmons, guardian of Thomas," &c., " children, and heirs of said deceased, the account of guardianship of said heirs was examined, sworn to, allowed, and ordered to be recorded. And, it appearing by the representation of Archange Simmons, late Palmer, guardian to Thomas," &c., "minor heirs of the estate of John Palmer, deceased, that their interest in the real estate of the deceased" (describing it) " should be sold for the support and education of said minor heirs, of which notice has been given to all persons interested :

" *Ordered*, that the said Archange Simmons, late Palmer, and guardian of said minors, be, and she is hereby empowered and licensed to sell and convey all of the interest of said minors in the aforesaid estate, for the purposes aforesaid ; the said guardian, previous to said sale, to *take the oath by law prescribed*, and to give *notice of such sale*, by causing an *advertisement* thereof to be published in a newspaper, printed in said city of Detroit, *three weeks successively*, at least thirty days before the day appointed for said

Palmer *v.* Oakley.

sale, and *give bond with two sureties*, according to the statute, in the sum of three thousand dollars."

Notice that the premises would be sold in pursuance of of the foregoing license, on February 4, 1832, at 3 o'clock P. M. at, &c., was published for three weeks successively (the first publication having been December 28, 1831,) in the Detroit Journal, a newspaper printed in the city of Detroit, and an affidavit of the publication &c., was filed and recorded in the probate office, pursuant to the act of 1818, (ante p. 439) on the 3d February, 1832.

It will be observed that the notice, though in accordance with the requirements of the licence to sell, was not such as was prescribed by the act of 1827, (ante p. 437, § 1,) but was such notice as the act of 1818, (ante p. 440, § 6,) authorized the probate court to direct executors and administrators to give, &c.

A bond to observe the directions of law respecting the sale, &c., required by the foregoing licence to sell, and by the act of 1827, (ante p. 438, § 5) was filed and approved by the judge of probate, on the said 3d day of February, 1832. The bond was executed by the said Archange, and by William H. Simmons, therein recited to be her husband, as principals, and by two sureties.

On the same day the said Archange made the oath to use her best skill and judgment in fixing the time and place of sale &c., required by R. S. 1827, p. 71, § 18, (see ante p. 440, § 18) and returned the same duly certified to the judge of probate.

On the day following, which was the time specified therefor in the notice of sale, the premises in question were sold, pursuant to the notice, to ———, through whom the defendant in this case derived title, he being the highest bidder; and a guardian's deed was thereupon executed to him accordingly, by said Archange, in which said William H. Simmons, her husband, did not join.

No affirmance by the probate court of sales by guardians was required by the statute.

On the trial, it was insisted on the part of the plaintiffs, that the defendant had failed to establish a valid title under these probate proceedings; because,

1. It did not appear, on the face of the decree appointing Archange Simmons guardian, nor was it shown by evidence *aliunde*, that the plaintiffs, (the alleged minors,) were under fourteen years of age, or that they were cited to choose a guardian.

2. The decree was void, because, as appeared on its face, said Archange was, at the time, a married woman; a *feme covert* being incompetent to be a guardian.

3. The guardianship bond executed by said Archange and her sureties, was void; said Archange being incompetent to execute a bond, by reason of her coverture, and her husband not joining therein.

4. The notice of sale of the premises in controversy, by said guardian, was not in accordance with the requirements of the statute, and was given before said guardian had taken the oath to use her best skill and judgment in fixing the time and place of sale, &c., (ante, p. 440, § 18,) and before the execution and approval of the bond to observe the rules and directions of law in making the sale, &c., (ante, p. 438, § 5.)

5. The deed of the said Archange, in consummation of the guardian's sale, was executed by her while a *feme covert*, without her husband joining therein.

These several objections to the validity of the title shown by the defendant, were overruled by the circuit court.

6. The plaintiffs also, during the trial, offered to introduce evidence to show, that, at the time of the decree appointing the said guardian, Thomas Palmer, one of the alleged minors, was over fourteen years of age. To this

evidence the defendant objected, and the objection was sustained by the court below.

The case went to the jury, who found a verdict for the defendant; whereupon, the plaintiffs moved that the verdict be set aside, and for a new trial, on the ground that the ruling of the circuit court, upon each of the several points above mentioned, was erroneous. The questions arising upon this motion were reserved, by the Presiding Judge, for the opinion of this court.

*Walker, Douglass & Campbell* and *H. T. Backus*, for the plaintiffs.

1. Archange Simmons, being a *feme covert*, was not competent to be a guardian, and her appointment, and all her acts as guardian were therefore void. A *feme covert* is not competent to execute the bonds which the statute, (ante, p. 436, § 5, p. 438, § 5,) required a guardian to give, with sureties; such bond executed by her would be void, 2 Steph. Com. 302; 1 Peters, 338; 1 Hill R. 242; and a sale of real estate by a guardian without giving bonds, would be void. *Williams* v. *Reed*, 5 Pick. 479; 1 Denio, 184. True, it has been held in England that a *feme covert* might be an administratrix, but this was before 22 and 23 Car. II, which required administrators to give bonds. 1 Com. Dig. Tit. Admr. B. 6, n. (o.) p. 487.

2. The circuit court erred in refusing to permit the plaintiffs to prove, that, at the time Mrs. Simmons was appointed guardian, Thomas Palmer, one of the alleged minors, was over fourteen years of age.

R. L. 1827, p. 57, § 1, required that before the probate court should *appoint* a guardian for a minor over fourteen years of age, and within the territory, the minor should be cited to appear and choose his own guardian. The probate record shows that the guardian was appointed

without citation of any of the minors, and upon the assumption that they were all under fourteen.

Whenever parties to, or who are affected by, judicial proceedings, whether *in rem*, or *in personam*, are by law entitled to notice of such proceedings, by service of process, citation, or otherwise, such notice is *essential to jurisdiction.* *Bloom* v. *Burdick*, 1 Hill's R. 139, 141, 142 ; *Matter of Underwood*, 3 Cow. 59 ; *Chase* v. *Hathaway*, 14 Mass. R. 222 ; *Dunning* v. *Corwin*, 11 Wend. 647 ; *Wait* v. *Maxwell*, 5 Pick. 217 ; *Hathaway* v. *Clark*, Id. 490 ; 4 C. & H. Ph. Ev. 865, 999 ; *Hollingsworth* v. *Barbour*, 4 Peters, 472 ; 18 Pick. 116.

The evidence offered, then, went to show, that as to Thomas Palmer, the probate court had, in fact, no jurisdiction to make the decree appointing the guardian.

It will not be denied that the decree of a court which has not jurisdiction, is *void*.

It is well established that "the jurisdiction of any court, exercising authority over a subject matter, may be inquired into in every other court where the proceedings of the former are relied upon and brought before the latter by the party claiming the benefit of such proceedings." *Elliott* v. *Piersol*, 1 Pet. R. 340 ; *Hickey's Lessees* v. *Stewart*, 3 Howard, 750. It makes no difference whether the judgment is sought to be impeached in an action directly upon it, or in a collateral action like the present. Ibid. ; *Holyoke* v. *Haskins*, 5 Pick. 20 ; *Bloom* v. *Burdick*, 1 Hill's R. 139 ; *Bigelow* v. *Stearnes*, 19 John. R. 40 ; 4 Ph. Ev. by C. & H. 910, '11, '12, '13, and other cases post. Or whether the validity of the judgment is drawn in question in the courts of the state where it was rendered, or of a sister state. Ibid. Or whether the judgment be that of a court of inferior or limited, or of superior or general jurisdiction, (except as to the burden of proof of want of jurisdiction ;) or whether it be the judgment of a court of

record or not.  4 Ph. Ev. by C. & H. 1021; *Bloom* v. *Burdick*, 1 Hill's R. 139, and 17 Wend. 483, there cited.

All the cases agree, that where a want of jurisdiction *appears on the face of the record,* the judgment will be treated as a nullity, whenever sought to be enforced, or any rights are claimed under it.   1 Hill, 139; 11 Ohio R. 442.

And the general rule is, that a judgment may be impeached by evidence *aliunde,* showing a want of jurisdiction.   Thus, all the cases hold that want of jurisdiction over the person may be shown *aliunde.*   *Bigelow* v. *Stearnes,* 19 John. R. 40; *Aldrich* v. *McKinney,* 4 Conn. R. 380; *Shumway* v. *Stillman,* 6 Wend. 447; *Tenny* v. *Filer,* 8 Id. 569; *Starbuck* v. *Murray,* 5 Id. 148; *Bradshaw* v. *Heath,* 13 Id. 407, 408; *Colvin* v. *Luther,* 9 Cow. 61; *Clark* v. *Holmes,* 1 Dougl. Mich. R. 390.   So where jurisdiction depended upon the character or occupation of the party, evidence has been admitted to show that he was not of such character, &c.   *Morse* v. *James,* 1 Willes, 122; *Perkin* v. *Proctor,* 2 Wils. 382; *Wise* v. *Withers,* 3 Cranch, 331; *Mills* v. *Martin,* 19 John R. 7.   So where jurisdiction depended upon residence, evidence has been admitted to show that the residence was not such as to confer it.   *Cutts* v. *Haskins,* 9 Mass. R. 543; *Holyoke* v. *Haskins,* 5 Pick. 20; *Weston* v. *Weston,* 14 John. R. 428; *Wyman* v. *Mitchell,* 1 Cow. 316.   So, *it would seem,* that wherever the judgment, order, or decree was obtained *ex parte,* and the persons affected by it are not bound to take notice of the proceeding, all jurisdictional facts may be inquired into to impeach such judgment.   *Welsh* v. *Nash,* 8 East. 391; *Perkin* v. *Proctor,* 2 Wils. 382; per Dallas, C. J. and Burrough, J. in *Brittain* v. *Kinnard,* 5 E. C. L. R. 139, '40.   And it has even been held that such judgment, &c. are not conclusive as to the merits.   *Marchland* v. *Gracie,* 2 Mill. Lou. R. 147, '8, and other cases in Kentucky and Maryland, cited in 4 Ph. Ev. by C. & H.

865, '6.   In pleading the judgment of an inferior court, it is necessary to allege all the facts which give the court jurisdiction.   *Bowman* v. *Russ*, 6 Cow. 236 ; *Wyman* v. *Mitchell*, 1 Id. 316 ; *Morgan* v. *Dyer*, 10 John. R. 161 ; *Mills* v. *Martin*, 19 Id. 7 ; *Morse* v. *James*, 1 Willes, 122. Of course these jurisdictional facts may be denied and inquired into as matters *in pais*, and as the only difference between the judgments of inferior and of superior courts is, as to the burden of proof of want of jurisdiction, (see supra,) it follows that the judgment of a superior court, may be impeached by showing affirmatively, against the legal presumption, a want of jurisdiction.

There are cases which seem, at first view, to conflict with the above.   They belong to two distinct classes, and are admitted to form exceptions to the rule we are attempting to establish.   Thus,

First : Where jurisdiction over persons is necessary, and has been acquired, and the power of the court to proceed to adjudicate between the parties depends upon the existence of other facts, into which the court is bound to inquire, and which may be contested like the merits. In such cases, we may admit that the judgment of the court is conclusive, as to the existence of such jurisdictional facts.   To this class belongs *Brittain* v. *Kinnaird*, 5 E. C. L. R. 139, for there the party appeared in the court where the judgment was rendered, and contested the very jurisdictional fact which he sought again to inquire into to impeach the judgment.   And *Ackerly* v. *Parkinson*, 3 Maule & Selw. 425, for there also the party appeared.   And *Leonard* v. *Leonard*, 14 Pick. 280, for, by reference to 14 Mass. R. 222, and 5 Pick. 490, it will be found that before a person could be adjudged *non compos mentis*, he must be notified of the proceedings, and may appear and contest the fact of whether he is so.   *Dublin* v. *Chadbourne*, 16 Mass. R. 433 ; *Judson* v. *Lake*, 3

Day's R. 322, and other cases, deciding that the probate of a will is conclusive, belong to this class, if, as is supposed, the heirs are parties to the probate, and may appeal therefrom, and are entitled to notice; otherwise they are cases *in rem* to be next noticed.

Second: In proceedings strictly *in rem*, no jurisdiction over persons is necessary. The whole world are parties, and all persons interested are bound to take notice of them. We may admit, (although this is more than the authorities will establish,) that, in general, in such cases, jurisdictional facts, into which the court was bound to inquire, and which might have been contested by the party interested, may be regarded as *res adjudicatæ* by the judgment. To this class belong *Grignon's Lessee* v. *Astor*, 2 Howard, 338; *McPherson* v. *Cunliff*, 11 Serg. & Rawle, 432, 426 —'30, and numerous other kindred cases.

These exceptions to the general rule we are attempting to establish, rest upon this ground, viz: that the parties to be affected by the judgment are either *in court*, as in cases *in personam;* or they are *bound to take notice of the proceedings*, without being brought before the court, as in cases *in rem;* and if the facts are such that the court had no jurisdiction, they are bound to show them. By not objecting they admit the jurisdiction; if they object, the facts are inquired into; and in either case the jurisdictional questions become *res adjudicatæ.*

But in the present case, there was *no party before the court.* Thomas Palmer had *no notice* of the proceedings to appoint a guardian for him. They were *ex parte;* behind his back. He *was not bound* to take notice of them, and the law did not recognize him as a party capable of appearing in court. He had no opportunity to contest the jurisdiction. The present case, therefore, does not come within either of the above exceptions. And the following cases, many of which have already been cited to estab-

lish different propositions in the foregoing argument, seem to show clearly, that the evidence offered was admissible, and would have shown that the decree appointing the guardian was void, as to Thomas Palmer. *Clark* v. *Holmes*, 1 Dougl. Mich. R. 391 ; *Welsh* v. *Nash*, 8 East. 402 ; *Holyoke* v. *Haskins*, 5 Pick. 20 ; *Hathaway* v. *Clark*, Ibid. 490, 219 ; *Heath* v. *Wells*, Ibid. 239 ; 18 Id. 116 ; *Griffith* v. *Fraser*, 3 Pet. Cond. R. 1 ; *Cutts* v. *Haskins*, 9 Mass. R. 543 ; *Smith* v. *Rice*, 11 Mass. R, 511 ; *Sherman* v. *Ballou*, 8 Cow. 304 ; *Perry's Lessee* v. *Brainerd*, 11 Ohio R. 442.

The evidence offered did not go to contradict the probate record. Even if it did, it was not for that reason inadmissible. *Clark* v. *Holmes*, 1 Dougl. Mich. R. 390 ; *Aldrich* v. *McKinney*, 4 Conn. R. 380 ; *Latham* v. *Edgerton*, 9 Cow. 227 ; *Starbuck* v. *Murray*, 5 Wend. 148 ; 4 C. & H. Ph. Ev. 801, and other authorities cited supra.

3. The decree appointing a guardian does not show jurisdiction. Neither citation of the minors, nor any finding by the court that they were under fourteen, appears. Nor was citation shown *aliunde*. The probate court was a court of *inferior* jurisdiction. 4 C. & H. Ph. Ev. 862, '3 ; *Dakin* v. *Hudson*, 6 Cow. 221 ; *Sherman* v. *Ballou*, 8 Id. 308 ; *Smith* v. *Rice*, 11 Mass. R. 510 ; *Bloom* v. *Burdick*, 1 Hill, 139. The rule in relation to such courts is, that jurisdiction must appear on the face of their proceedings. *Wight* v. *Warner*, 1 Dougl. Mich. R. 384 ; *Clark* v. *Holmes*, Ibid. 391 ; 4 C. & H. Ph. Ev. 1013 ; 11 Wend. 647 ; 42 E. C. L. R. 1034, 1006, 685, 305, 667 ; 35 Id. 415 ; 5 Pet. Cond. R. 28 ; and must be proved by persons claiming under them. See cases cited *supra*, showing what facts it is necessary to allege, in pleading the judgments of inferior courts.

4. The guardian's sale was void because the notice given thereof, was not in accordance with the statute, nor was the bond filed, or oath taken, as required by the

statute, before publication of the notice.  Ante, p. 438, § 5, p. 440, § 18 ; *Williams* v. *Reed*, 5 Pick. 480 ; *Parker* v. *Nichols*, 7 Id. 111 ; *Ventress* v. *Smith*, 10 Pet. R. 161, 175 ; *Knox* v. *Jenks*, 7 Mass. R. 488 ; *Denning* v. *Smith*, 3 John. Ch. R. 332, 344, '5 ; *Bloom* v. *Burdick*, 1 Hill, 130, 141 ; *Berger* v. *Duff*, 4 John. Ch. R. 367 ; 6 Cow. 387 ; *Stead's Ex'rs* v. *Course*, 2 Pet. Cond. R. 151 ; *Williams* v. *Peyton*, 4 Id. 395 ; *Parker* v. *Rule's Lessee*, 3 Id. 308 ; *Wellman* v. *Lawrence*, 15 Mass. R. 326 ; *Wilcy* v. *White*, 3 Stew. & Port. 355.

*A. D. Fraser*, and *Van Dyke & Emmons*, for the defendant.

1. Archange Simmons was not incompetent to be a guardian, on account of her coverture.  A married woman may execute a power ; Sugd. on Pow. 184 ; 13 Law Lib. 99, 100 ; Lew. on Trusts, 44, 46 ; whether given before or after her marriage ; and the concurrence of her husband is not necessary.  1 Ves. Sen. 303, 517 ; Fonb. Eq. 91, note.  So she may be an administratrix or executrix, or may execute an authority ; or may, *in autre droit*, sell lands even to her husband.  2 Com. Dig. 223 ; 1 Id. 480, 497 ; 1 Sch. & Lef. 266 ; Story on Agency, 8 ; Toller's Ex'rs. 94 ; 4 Bac. Abr. 548 ; 3 John. Ch. R. 543 ; 1 Am. Ch. Dig. 255.  Her husband need not join with her in the execution of a power.  13 Ves. 517 ; Eq. Cas. 138.  The incapacity created by the common law applies merely to the civil rights of a married woman, and is for her protection.  3 Peters, 242 ; 1 Brownl. & Gold. 31.  So a *feme covert* may be a guardian.  3 Pick. 280 ; 1 Dallas, 186 ; 2 Swanst. 567 ; *In re Gornell*, 1 Beavan, 348 ; *Jannett* v. *The State*, 5 Gill. & John. 27 ; 4 Com. Dig. 510 ; 1 Bro. 288.  There is nothing in our statute which expressly forbids the appointment of a married woman guardian ; this is not pretended ; but it is said

that the statute requires certain bonds to be executed by a guardian, and that she is not competent to execute a bond, and therefore is incompetent to be a guardian. May we not reply that, as the statute does not forbid, it admits a married woman to be a guardian; and, by fair implication, permits her to do every material thing, even to the executing the bond, if that be necessary? But,

2. Whether it was competent for Mrs. Simmons, as a married woman, to have executed the bonds or not, is immaterial, and cannot affect the validity of the proceedings. For, the statute does not require that the guardian should *execute* the bonds; it is satisfied if bonds are *given*, as they were in this case; the sole object of the statute is to provide *security*. *Brockett* v. *Brockett*, 2 Howard, 240. And even if the statute did require the *execution*, by the guardian, and a *feme covert* should be deemed incompetent to execute a bond, the proceedings in this case would be *irregular* merely, not *void*. *Russell* v. *Coffin*, 8 Pick. 143; *Bloom* v. *Burdick*, 1 Hill, 130; *Ray* v. *Doughty*, 4 Blackf. R. 115; *Westcott* v. *Cady*, 5 John. Ch. R. 334.

3. The execution of the bond required by R. S. 1827, p. 88, § 2, (ante, p. 438, § 2,) was not a condition precedent to the sale of the premises, and even if it had been, it was perfectly competent to execute it after notice of sale and before sale made. *Bloom* v. *Burdick*, 1 Hill, 130.

4. It was neither necessary nor proper, that the husband of Mrs. Simmons should join with her in the execution of the deed given in consummation of the sale. Sugd. on Pow. 184; 13 Law Lib. 100; Lew. on Trusts, 44, 46.

5. It was not necessary that the decree appointing Mrs. Simmons guardian, should show, on its face, that the minors were under fourteen, or that either of them were cited to choose a guardian; nor was the evidence offered by the plaintiffs to show that Thomas Palmer was over fourteen, admissible.

The probate court had general jurisdiction over the appointment of guardians for minors. The petition of Mrs. Simmons to be appointed guardian for minors represented to be under fourteen, called that jurisdiction into exercise. The subsequent action of the court was the exercise of that jurisdiction. In its exercise the court inquired into, and adjudicated upon the very fact that the minors were under fourteen. Tha decree was the result of that adjudication ; and it is binding and conclusive until reversed on appeal ; it cannot be questioned collaterally. To receive the proffered testimony now, would, in effect, be to review the sufficiency of the testimony before the judge of probate. These principles are fully established by the following authorities, many of which show, also, that it is not necessary that the decree of a probate court should show on its face the facts necessary to give jurisdiction. *Grignon's Lessee* v. *Astor*, 2 Howard, 319, 339, 340, '1, '2, '3 ; 10 Peters, 477, '8 ; *United States* v. *Arredondo*, 6 Id. 728, 730 ; *Thompson* v. *Tolmie*, 2 Id. 165 ; *Ex parte Tobias Watkins*, 3 Id. 202 ; *Ph. and Tr. R. R. Co.* v. *Stimpson*, 14 Id. 458 ; *Tarver* v. *Tarver*, 9 Id. 174 ; *Jenkins* v. *Robinson*, 4 Wend. 436 ; *Jackson* v. *Crawford*, 12 Id. 533 ; *Jackson* v. *Irwin*, 10 Id. 431 ; *Brittain* v. *Kinnaird* 5 Eng. C. L. R. 139 ; *Mould* v. *Williams*, 48 Id. 469 ; *Ackerley* v. *Parkinson*, 3 Maule & S. 420 ; 8 N. Hamp. R. 124 ; 1 Greenl. Ev. 587 ; *Leonard* v. *Leonard*, 14 Pick. 280 ; 1 Ph. Ev. 343, 340 ; *Cassels* v. *Vernon*, 5 Mason, 332 ; *French* v. *French*, 1 Dick. 268 ; *Bogardus* v. *Clark*, 4 Paige, 623 ; *Moore* v. *Tanner's adm's*, 5 Monroe, 425 ; *Rhoades' Lessee* v. *Selin*, 4 Wash. C. C. R. 720, '1 ; *Leverett* v. *Harris*, 7 Mass. R. 292, '7 ; *Perkins* v. *Fairfield*, 11 Id. 227 ; *Dublin* v. *Chadbourne*, 16 Id. 433 ; *McPherson* v. *Cunliff*, 11 Serg. & R. 422—'9 ; 2 Whart. Dig. 131 ; *Thompson* v. *McGow*, 2 Watts, 164, 261 ; *App* v. *Driesbach*, 2 Rawle, 287 ; *Bush* v. *Sheldcn*, 1 Day's R. 170 ; 2 Strange,

480 ; 1 Id. 703 ; 1 Ld. Raym. 262 ; 3 T. R. 125, 129 ; *Jackson* v. *Hixon*, 17 John. R. 125 ; 5 Conn. R. 168 ; *Brown* v. *Lanman*, 1 Conn. R. 467 ; *Judson* v. *Lake*, 3 Day's R. 318 ; *Goodrich* v. *Thompson*, 2 Id. 305 ; 4 Id. 215 ; *Allen* v. *Lyons*, 2 Wash. C. C. R. 475 ; *Dubois* v. *Dubois*, 6 Cow. 353 ; *Mooers* v. *White*, 6 John. Ch. R. 381 ; 1 Ph. Ev. 242 ; 1 Stark. Ev. 253 ; 7 Cow. 353 ; 1 Pick. 535 ; 3 Binney, 498 ; 1 Mass. R. 229 ; 7 Id. 292 ; 5 Pick. 140 ; 2 Edw. Ch. R. 242 ; 1 Wheel. Eq. Dig. 527 ; 4 C. & H. Ph. Ev. 824, 853, '57, '8, '9 ; Ohio Dig. 344, 295–'8, 303 ; 11 Ohio R. 257 ; 9 Id. 119 ; 4 Dallas, 451 ; 13 Mass. R. 166 ; 7 Wheat. 59 ; 2 Binney, 46 ; 6 & 7 Ohio R. 340 ; 3 Mass. 399 ; 15 Id. 26 ; 3 Wash. C. C. R. 122 ; 1 Bailey, 212 ; *Loring* v. *Steinman*, 1 Metc. 204 ; 1 Ph. Ev. by C. &. H. 340, 343 ; 4 Id. p. 824, n. 586, p. 853, n. 609, p. 857, n. 613, p. 858, n. 616, p. 859, n. 869.

The proceedings of probate, orphan's and surrogate's courts are viewed with great indulgence and liberality, whenever they are brought in question, and great allowance is made for informalities in them. *Goforth* v. *Longworth*, 3 Ohio R. 129 ; *Messinger* v. *Kintner*, 4 Binney, 103, '5 ; *Lyle* v. *Forman*, 1 Dallas, 483, '4, '12, '13, '17 ; *Ludlow* v. *Wade*, 4 Ohio R. 401 ; per *Yates*, J. in 6 Binney, 497–'9 ; *McPherson* v. *Cunliff*, 11 Serg. & Rawle, 432 ; 11 Mass. R. 229 ; 2 Howard, 343 ; *Carver* v. *Jackson*, 4 Peters, 99.

Even if the decree in this case was not valid, this would not affect the title of a *bona fide* purchaser. 6 John. Ch. R. 381 ; 20 John. R. 420 ; 5 N. Hamp. R. 246 ; 1 Ohio R. 684, '5 ; 1 Story's R. 552 ; 2 Nott & McC. 577 ; 2 Binney, 46, 227 ; 1 Serg. & Rawle, 163, 433, '4 ; 2 Ohio R. 560 ; *Swayes* v. *Burke*, 12 Peters, 24 ; *Armstrong* v. *Jackson*, 1 Blackf. 212 ; 7 Ohio R. 165 ; 1 Sumner, 500 ; 2 Mason, 351, '2, '3 ; 2 Peters, 167 ; 2 Root's 359 ; 2 Pick. R. 243 ; 2 Howard, 341 ; 1 Ves. Sen. 195 ; 9 Ves. Jr.

97 . 8 John. R. 366 ; 5 Id. 273 ; 4 Wheat. 507 ; 11 Mass. R. 227 ; 6 Ohio R. 490 ; 4 Watts' R. 85 ; and other cases cited above.

This is not the case of an heir claiming property of his ancestors, in opposition to a title derived from a sale by an administrator, to pay the debts of the decedent, on the ground that the proceedings are void.  Here the guardian represents the minor ; made the sale on his account, and for his benefit ; and now he comes to repudiate the sale, after the lapse of years ; after receiving the avails of it. Under these circumstances, the plaintiffs are not entitled to be heard with any great favor.

Even if it is necessary that jurisdiction should appear on the face of a probate decree, it sufficiently appears in this case.  It appears that the minors were under fourteen. The petition of Mrs. Simmons, the mother, represents it, and the court find it.

The decree in this case is not to be regarded as the decree of an *inferior* court.  R. S. 1833, p. 323, (ante, 438, '9 ;) 1 Greenl. Ev. 586.

6. As to the notice of sale given by the guardian.  It was *published* in accordance with the statute of 1818, (ante, p. 439, § 6,) instead of being posted up, as required by the statute of 1827, (ante, p. 437, § 1.)  The former act was intended to extend to guardians, and has always been construed to extend to them since its passage. The usage of the probate courts throughout the state, has always been to order notice to be given by publication. This usage must be looked to and received as a correct exposition of the statute.  *Communis error facit jus.*  *McKeen* v. *Delaney*, 2 Pet. Cond. R. 179 ; *Durousseau* v. *United States*, Ibid. 380 ; *United States* v. *Fisher*, 3 Id. 421 ; *Elmendorf* v. *Taylor*, 6 Id. 62 ; 2 Overton, 118 ; *Lyle* v. *Forman*, 1 Dallas, 484 ; *Delany* v. *McKeen*, 1 Wash. C. C. R. 525 ; *Jackson* v. *Collins*, 3 Cow. 89, 91, 92 ; *McDermont* v.

*Lorillard*, 1 Edw. Ch. R. 273; 4 Gill. & John. 6; Cro. Chas. 416; Plowden, 18, 88; *People* v. *Utica Ins. Co.*, 15 John. R. 380; *Croker* v. *Crane*, 21 Wend. 211; *Snuyder* v. *Warren*, 2 Cow. 318; 9 Bac. Abr. 246, 250, Ed. 1846; 2 Inst. 11; 1 Dallas, 136; *Curry* v. *Paige*, 2 Leigh's R. 617; *Troup* v. *Haight*, 1 Hopk. Ch. R. 245, '68; *Farren* v. *Powers*, 1 Serg. & R. 105; 5 Cranch, 29, 32, '3; 8 Ohio R. 49.

WHIPPLE, J., delivered the opinion of the Court.

The case presented for our judgment has been considered with the deliberation which its importance demands. In proceeding to announce the opinion of the court upon the several questions involved in it, we shall depart somewhat from the order in which they have been presented to us.

1. It appears on the face of the decree of the probate court appointing Archange Simmons guardian of the plaintiffs, that she was, at the time, a *feme covert*; and it is contended on the part of the plaintiffs, that she was incompetent to be a guardian, on account of the coverture; and that therefore the decree, and her subsequent acts as guardian, are void. It is said that the statute under which these proceedings were had, required that a guardian appointed by the court of probate, should execute a bond, with sufficient sureties, for the faithful discharge of the trust; and, as a bond executed by a *feme covert* is void, the conclusion is sought to be drawn that the legislature intended to exclude her from the office of guardian; in other words, it is contended that a person incapable of executing the bond, is also incapable of becoming a guardian to minors.

But does the statute make it necessary for the guardian to *execute* the bond? The first section of the "Act empowering the Judge of Probate to appoint guardians to

minors and others," approved April 12, 1827, (R. L. 1827, p. 57,) directs that "*sufficient security*" shall be taken of guardians "for the faithful discharge of their trusts," and provides that when a guardian chosen by a minor above the age of fourteen years "is unable to give sufficient security," the judge of probate shall be authorized to appoint a guardian for such minor. The fifth section of the same act provides, that "guardians shall *give* bond," &c. " with sufficient securities for the faithful discharge of the trust," &c. " when and so often as they shall be thereunto required." (Ante, 433, § 5.) It is very clear that the words of the act do not make it imperative upon the guardian to *execute* the bond ; and it is equally clear that the end to be attained does not render such a construction necessary. When the guardian *gives* a bond, *with sufficient security,* the object of the law is fully answered. If the fifth section stood alone, the construction contended for by the plaintiffs might prevail, as the words, "shall *give* a bond," might reasonably be construed to be equivalent to the words shall *execute* a bond. I am unable to perceive the necessity for the *execution* of the bond by the guardian, as no additional security is thereby afforded to the minor in the event of a breach of its conditions. The guardian would, under any circumstances, be personally responsible, in a court of law or equity, for the faithful discharge of the trust reposed in him. Cases may arise which would not only authorize, but require us to give to the language of the fifth section the construction contended for ; but in the present case, we think the bond filed, with *sufficient security,* is not only a literal compliance with the words of the act, but answers the end and object for which the bond is required.

We are not entirely without precedent for this construction. The English statute of 3 Jac. I, c. 8, provided, that "no execution should be stayed, upon, or by any writ of

error or supersedeas thereupon," &c. unless the person sueing out the writ, " with two sufficient sureties," &c. should " *be bound* unto the party for whom the judgment was given, by recognizance to be acknowledged in the same court," &c.  Similar language was used in the subsequent statutes of 13 Car. II. c. 2, and 1 Geo. IV. c. 87, on the same subject.  By the construction given to the statute of 3 Jac. I. it was not necessary that the plaintiff in error should join in the recognizance; the words, *with sureties*, having been construed to mean *by sureties*.  And a like construction was given to the statute of 1 Geo. IV.  1 Bac. Abr. 552, '3 ; 2 Sell. Pr. 370 ; 1 Barnes, 75.  In *Barnes* v. *Bulver*, Carth. 121, it was objected that the plaintiff in error had not given his own recognizance to the defendant; to this it was answered that he had found two sufficient sureties, by which the intent, though not the letter of the statute, was satisfied.  See also, 2 Tidd's Pr. 1251, and cases there cited.  One reason given by Tidd for this construction is, that an infant plaintiff could not enter into the recognizance, nor a plaintiff who had become *feme covert* after the action brought; and, as the legislature could not have intended to exclude infants and *femes covert* from the benefit of the act, the courts so construed it as that it would apply to all plaintiffs in error. The same course of reasoning will apply, with additional force, to the provision of our statute which requires a guardian to give a bond with sureties.  It may well be argued that the legislature never could have intended to withdraw from the care and custody of her who is guardian by nature, her infant child, and place it under the control of a mere stranger.  To warrant such a construction, the statute should contain clear words of exclusion.

   Let us grant, however, that the statute does require that the guardian should *execute* the bond ; does it follow that the grant of letters of guardianship to a *feme covert*

who is not legally competent to execute a bond, and her acts as guardian, are absolutely void? The giving of the guardianship bond is not a condition precedent to the execution of the trust of guardian. Our statute, like that of Massachusetts, requires that the guardian *appointed* by the probate court should *give* bond with sureties. The statute of New York requires the bond to be given *before* the appointment is made. In *Bloom* v. *Burdick*, 1 Hill, 130, a title was sought to be sustained through an administrator. By the statute of New York, the surrogate was required, upon granting administration, to take sufficient bond of the person to whom the administration was granted, with two or more competent sureties. Upon the production of the bond it appeared that it was executed by only one surety. It was contended that this circumstance rendered the proceeding void. The court, however, held, that this was an error to be corrected on appeal, and not a defect of jurisdiction, which rendered the whole proceeding void. In *Russel* v. *Coffin*, 8 Pick. 143, the precise question now under consideration arose, and Chief Justice *Parker*, in delivering the opinion of the court, says: " The letter of guardianship is far from being an execution of the power of the judge of probate, under the statute; but its defects are not substantial. It is directed to the select men of Nantucket, without naming them; but in the close of the instrument, the names of the persons holding that office are mentioned. The bond is taken from them in their private capacities, and binds their heirs, executors and administrators. This, however, does not make the guardianship void; for the giving of bond with surety, is not a condition precedent to the executing the authority of guardian, it being in the power of the judge of probate to remove guardians if they fail to give security from time to time, as he shall direct."

If this case contains a sound exposition of the statute from which ours was borrowed, it may well be questioned whether letters of guardianship granted to a married woman are absolutely *void*, although the statute might contemplate the execution of the bond by her. The granting of letters of guardianship is a *judicial act ;* and if the court, by whom such letters are granted, has jurisdiction of the subject matter, and of the parties, will not the decree bind ? Let it be admitted, that our statute requires a bond from the person to whom letters of guardianship are granted, and that it does not contemplate that letters can be granted to a person who has not the legal capacity to execute the bond ; would the acts of such a guardian be void? I am inclined to think they would not, while the decree remained unreversed. If the decree were *absolutely void*, all acts done under it would also be void ; so would the bond, as respects the sureties. Yet, I think, it will hardly be contended that acts done by virtue of the decree, 'would, as respects third persons, be held void. Receipts of money by such a guardian, and acquittances granted by her, would be held valid ; and, if she abuses the trust confided to her, I have no doubt the sureties would be liable on the bond. The granting of letters of guardianship, under such circumstances, might be an error in law, sufficient to authorize their revocation, but until revoked, the acts of the guardian would be held binding.

The case of *Janett* v. *The State*, 5 Gill & John. 27, establishes both of these propositions. In that case, a person died, leaving a widow and an infant son entitled to personal property. The widow refusing to act as guardian, the orphan's court appointed some third person who accepted the trust. The person thus appointed, died ; and the mother, (who, in the mean time intermarried the plaintiff,) as natural guardian of the infant, and with the

consent of her second husband, undertook the guardian-
ship of the infant, and gave a bond in that character,
with security, in which her husband united.  An action
of debt was brought upon the bond against Janett, the
second husband, as one of the sureties in the bond ; and
it was held that the orphan's court had jurisdiction to ac-
cept the bond, and that the action could be maintained
against the surety without sueing the guardian.  I shall
recur to this case hereafter for another purpose ; my on-
ly object in referring to it now is, to show, that the sure-
ties in a guardianship bond were held liable, although
the guardianship of the infant was entrusted to a *feme co-
vert*.  By the statute of Maryland, a bond was required
of the natural guardians, in certain cases ; and it was
urged with great force and ability by counsel who have
attained to the highest honors of the profession, that from
this circumstance, it was clearly inferable that the statute
never contemplated that letters of guardianship could be
granted to one who was legally incompetent to execute
the bond ; and if so, that the bond was void as to the
sureties.  The court of appeals of Maryland, however,
affirmed the judgment of the county court declaring the
sureties liable.

In the case of *Ray and wife* v. *Doughty and another Admrs.*
4 Blackf. R. 115, it seems that letters of administration
were granted to a widow, being *nineteen years of age,* on
the estate of her deceased husband, and that suit was
brought against her co-administrators, for a devastavit
committed by the infant administratrix.  It was held, that
" while the letters of such infant administratrix remained
unsuspended and unrevoked, the payments made to her
by the debtors of the intestate, and the delivery of goods
of the estate to her by her co-administrators, are to be
considered in the same light, as if her authority were un-
disputed."  It was further held, that the granting of let-

ters of administration is a judicial act, and where the court granting them has jurisdiction, individuals and courts of justice are bound to respect the authority of the lotters, and to presume *omnia rite acta.* The statute of Indiana, like our own statute, requires a bond to be given by a person to whom administration of an estate is granted, and yet, the acts of an *infant* administratrix were adjudged valid.

Tne case of *Westcott* v. *Cady*, 5 John. Ch. R. 335, asserts the same principle. In that case, it was stated in the answer, " that the plaintiffs were aliens, and residents in England, and could not administer," &c.; and in the arguments of counsel it was urged, that the plaintiffs could not be regarded as administrators, because, being aliens, always residing in a foreign country, they never could have qualified as such. Upon the question thus raised and discussed, the Chancellor, *(Kent,)* remarked : " Another objection, of a technical kind, is, that the plaintiffs are aliens, and residents in England, and that they have not qualified themselves, according to law, to sue here as administrators. The answer to this is, that letters of administration, under the seal of the court of probates of this state, are produced, and I am bound to presume *omnia rite acta,* and to give full credit to the judicial acts of a competent jurisdiction. I am not bound to look beyond the letters of administration, *sub pede sigilli.*" p. 343.

It has also been held, that payment to an executor who had obtained probate of a forged will, was a discharge to the debtor, notwithstanding the probate was afterwards declared null in the ecclesiastical court. Will. on Ex'rs. 404 ; *Allen* v. *Dundas*, 3 T. R. 125, 129 ; *R. Peebles'* Appeal, 15 Serg. & R. 39 ; 4 Bac. Abr. 62. It would be productive of infinite inconvenience and injustice if a contrary rule were established. There would be no safety in dealing with an executor, administrator or guardian,

unless the adjudications of the probate court in granting the probate of wills, letters of administration, and of guardianship, are entitled to the highest credit, and are to be regarded as conclusive until revoked.   Errors of law or fact, *when the court has jurisdiction,* will not render void the decree of a probate court.

If the views I have expressed respecting the force and effect of decrees of the probate court be correct, it is apprehended, that, although *it is incompetent to grant letters of guardianship to a feme covert,* yet, *if granted,* the acts of a guardian, within the scope of his powers, will be binding and obligatory, and afford full and ample protection to third persons dealing with him.   Our statute does not, in terms, prohibit the appointment of a *feme covert* as guardian.   If such an act is prohibited, it must be in consequence of that provision which requires a guardian to give a bond ; or, the incapacity must result from the legal relationship existing between husband and wife.   I have endeavored to show, that the execution of the bond, by the guardian, is not required, and that the spirit of the statute is fully complied with, if a bond is given with sufficient sureties ; and that if I am in error in this respect, and a bond is required to be executed by the guardian, yet, the decree of the probate court granting letters of guardianship to a *feme covert,* is not, for that reason, void ; that the court of probate having jurisdiction of the subject matter, the grant of letters of guardianship to a *feme covert,* (whose bond at common law would be void,) is a mere error in law, which might be corrected upon appeal, but which does not render the decree nugatory. These positions, it is believed, are abundantly sustained both upon principle and authority ; and are sanctioned by sound policy, reason and justice.

There being no express statutory disqualification, is the

appointment of a *feme covert* as guardian, inhibited by the common law?

Between the civil and the common law, there exists a wide diversity in respect to the legal consequences of marriage. The great point of distinction is this: that by the former, husband and wife are regarded as distinct persons who may have separate estates, contracts, debts and injuries; whereas the latter treats them as one. So distinct were the husband and wife by the Roman law, that they might contract with each other; and, upon the same principle, sue each other. Bro. Civ. Law, 82, '3. Some of the evil consequences which might be supposed to flow from permitting the wife to enter into contracts without the consent of the husband, were obviated by rendering such contracts inoperative upon the husband, and permitting her to sue and be sued without her husband. The authority to sue and be sued, however, is recognized in the tribunals in England, which have, to some extent, retained the imperial constitutions, viz: the courts of equity, and ecclesiastical courts.

The disabilities which, at the common law, attach to a *feme covert*, apply solely to her civil rights; and a reason among others for creating the incapacities provided in that code, is to be found " in the variety of wills with which human nature is ordinarily constituted, which makes it necessary for the preservation of peace, that where two or more persons are destined to pass their lives together, one should be endowed with such pre-eminence as may prevent or terminate all contestation." Experience and observation prove that this pre-eminence should be lodged in him upon whom rests the chief burden of educating, defending and providing for the wants of his family, and who is endowed by nature with those qualities, moral, intellectual and physical, which enables him to sustain that burden.

Palmer *v.* Oakley.

As a consequence of the authority vested in the husband, a *feme covert* has, in general, no power to contract. The law declares all contracts made by *femes covert* absolutely void.   To this general rule, however, there are a few exceptions; such, for instance, as her power to contract for necessaries, which will bind the husband.   At the common law, she is incapable of executing a deed; therefore, the bond of a *feme covert* is void.   To this general rule, also, there are exceptions which will be noticed hereafter.

The powers and duties of guardians are not expressly defined by the statute of 1827, but it may be fairly inferred that a guardian has not only the custody of the person of the ward, but has also the control of his personal property, and, for certain purposes, of his real estate. His interest in the real estate is sufficient to enable him to maintain trespass, *Byrne* v. *Van Hoesen,* 5 John. R. 67; or to lease it for a term of years, 4 Bac. Abr. 585; and, as the guardian stands to his ward, *in loco parentis,* he may maintain an action on the case for seduction.   In general, a guardian possesses all the powers of a guardian under the statute of 12 Car. 2, who, it is said, has the same interest in all respects as a guardian in *socage,* except as to the time and *modus habendi;* 4 Com. Dig. 510.   A guardian, it is said, has an authority coupled with an interest; but this interest cannot be regarded as a *beneficial,* but a mere *legal* interest.   In *Granby* v. *Amherst,* 7 Mass. R. 5, the court said that by the law of Massachusetts from which ours was borrowed, guardians, being agents of their wards, have an authority not coupled with an interest.

It was contended in argument, that a *feme covert* might execute the powers and duties of a guardian, administrator, or executor, without the consent of her husband. And this position was sought to be sustained by showing

the practice which prevails in the court of chancery in England, in respect to the appointment of guardians, and in the ecclesiastical courts in respect to the appointment of executors and administrators.

These tribunals are, for the most part, governed by the rules of the civil law in respect to the incidents of coverture, regarding the wife as in many respects a *feme sole*, and in view of the wide distinction which we have already shown to exist between the civil and the common law on this subject, it is evident that their decisions must be followed with much caution.

Wentworth, in his treatise on executors, (p. 375—'7,) says: "As for the second point, viz: wives or women coverts being made executors, and so having the office of executorship put upon them against their husband's will, there has also been diversity of opinions. In the time of King Edward the First, *Brab.* Justice, saith she may be executor without her husband, and the administration shall be delivered to her only. And I think he meant that this might be without the assent of the husband, or whether he would or not; for so it is said in the time of King Henry the Seventh to be the *law spiritual;* and indeed in courts spiritual *no difference is made between woman married and unmarried*, for aught I can find. There a wife sueth, and is sued, alone without her husband; he intermeddleth not nor is meddled with touching the things pertaining to his wife. But at the common law it is otherwise; and there, as *Brian*, Chief Justice, saith, a wife, without the assent of her husband, cannot be executor, he meaning thereby that the husband may oppose and hinder it; for such a one may be named executor in and by a will, without the knowledge of the husband." "She may clearly, as well as any other person, (especially if her husband concur with her therein,) refuse the office, trust, and charge, so as if there be no other executor

named, the ordinary must commit the administration."
" But suppose she doth come into court, and offers her-
self ready to take the executorship upon her; and, on the
other side, her husband expresseth his disassent thereunto,
praying that she may not have the execution of the will
to her committed; what will then be done? This, I con-
fess, pertains to another learning, and not to that of our
profession.   But forasmuch as I find, that in the courts
spiritual, a wife stands in the same plight and state as a
woman sole, the husband not intermedling withal or the af-
airs of the wife; therefore do I conceive, that in that court
the husband's refusal will not be of force to hinder the com-
mitting of the executorship to the wife," &c.   In refer-
ence, however, to the legal consequences of marriage at
the common law, the same author says: " This stands
clear in the rules of the law of England, that the wife is
under the husband's power," &c.   " But if once the will
be proved, and the execution thereof committed to the
wife, though against her husband's mind and consent, I
think it will stand firm; and the husband and wife being
after sued, cannot say she was never executrix.   And I
doubt whether the wife administering without the hus-
band's privity and assent, although the will be not proved,
do not conclude her husband as well as herself from say-
ing after, in suit against them, that she neither was exec-
utor, nor did ever administer as executor.   Yet, perhaps,
this administration by the wife, against her husband's
mind, will, (as against him,) be as a void act; else cannot
I see how *Brian's* opinion before cited, viz: that the wife
shall not be executor without or against her husband's
mind can be law."

By the civil code it is quite clear that a *feme covert* might,
even against the will of the husband, take upon herself
the office of executor or administrator, while at the com-
mon law, it is equally clear that she cannot, without his

consent.   The reason of for this diversity being, that by the former law, *femes covert*, in respect to civil rights, are regarded us *sole*, while at the common law, a different rule prevails.   Yet, I am not prepared to say that, if administration be committed to the wife, without the assent of the husband, her acts will not bind, so long as the letters remain unrevoked.

Toller, in his treatise on executors, recognizes the rule, that a *feme covert* may, with the consent and concurrence of her husband, take the office of an executrix.   (p. 31.) The same author, (p. 91,) uses this language : "If a *feme covert* be entitled, she cannot administer without the husband's permission, inasmuch as he is required to enter into the administration bond, which she is incapable of doing.   But if it can be shown by affidavit that the husband is abroad, or otherwise incompetent, a stranger may join in such security in his stead.   In either case, the administration is committed to her alone, and not to her jointly with her husband."   In the case of an infant entitled to administration, the practice is to assign it to a guardian of the infant, during his minority.   The reason for committing administration to a guardian of an infant, arises, however, from a want of capacity on the part of the infant, and as a protection to the inexperienced, against the machinations of the fraudulent; while the disabilities of *femes covert* are the consequence of the sole authority which the law has recognized in the husband.

The rule as stated by Toller, will be found to be sustained in 4 Bac. Abr. 12.   It is there said that a *feme covert* may be appointed executrix, and that in the spiritual courts she is considered as a *feme sole*, capable of sueing and being being sued without her husband; and, therefore, according to their law, she may take upon her the probate of a will without the assent of her husband. It is denied, however, that by the common law she can

take upon herself that office without such assent; and if the spiritual courts proceed to compel her, against the consent of the husband, to take upon herself the executorship, a prohibition will be granted. If, however, a wife administers, though against the consent of the husband, and an action is brought against them, they are estopped to say that the wife is not executrix. Ibid. 13. From this, it would seem, that administration committed to a wife, against the will of her husband, is not void, but will bind until revoked.

The capacity of a *feme covert* to become executrix or administratrix, is also affirmed by Baron *Comyn.* 1 Com. Dig. 480, 497. See also Chitt. on Contr. 149; Will. on Ex'rs. 325, '6; 1 Sch. & Lef. 266. It is also well settled that a *feme covert* may execute a power simply collateral; and, although once questioned, it seems she may also execute a power appendent, or in gross. Sugd. on Pow. 155; *Godlphin* v. *Godolphin*, 1 Ves. 21; Lewin on Trusts, 89.

If, then, a *feme covert* may, with the consent of her husband, execute the office of executor and administrator, and may, in a variety of other cases, act *in autre droit*, it is difficult to imagine why she may not, with the like consent, execute the office of guardian under our statute. I say, with the consent of the husband; for, looking to the duties and powers which appertain to that office under our statute, and to the legal consequences which the common law attaches to marriage, I am satisfied that the consent of the husband is necessary; although I am inclined to the opinion, that letters of guardianship granted to a wife, by a competent jurisdiction, without such consent, would not be absolutely void, but simply voidable.

Express authority is not wanting, however, to show that a *feme covert* may be a guardian. "It is improper that the wife of a man addicted to the habits of intemperance, should be guardian (in socage,) she being subject to his

control." 4 Bac. Abr. 548. "If a *feme* guardian marry, the guardianship is not transferred to the husband." 4 Com. Dig. 510; *Jannett* v. *The State*, 4 Gill. & John. 27. I regret, very much, that the opinion of the court of appeal does not appear in the report of the case last cited. The character of the counsel who took part in the argument, and the research and ability exhibited in the briefs which appear in the case, show that it was one of no ordinary interest; and it seems somewhat remarkable that the opinion of the court is not given. From what does appear, however, it is manifest that the capacity of a married woman, to take upon herself the office of a guardian was fully discussed; and the court must, from the judgment which they rendered, have considered it competent for a *feme covert* to execute the duties of guardian, with the consent of her husband, notwithstanding a bond, in certain cases, was required. In fact, the suit was instituted on the guardianship bond, and against the husband as one of the sureties. In that case, as in this, it was contended that a married woman could not act as natural guardian, for by the act of Maryland of 1798, such guardian was required to give a bond; and that the bond of the principal, being at common law void, it was also void as to the sureties. The judgment of the county court, however, in which it was held, 1st. That the mother was the natural guardian; 2d. That the orphan's court had jurisdiction to accept the bond; and 3d. That the action could be maintained against the surety without sueing the guardian, was affirmed.

*In re Gornall,* 1 Beavan, 348, a petition was presented in behalf of an infant, praying a reference to a master to approve of a proper person to be guardian. From the case it appears, that, by an order of the court, the mother of the infant petitioner, was appointed his guardian, and that after such appointment she married. In support of

the motion it was said, that it was of course, where a lady who had been appointed guardian, married, to appoint a new guardian.  The master of the rolls admitted that it was the usual practice in such cases to direct a reference, on the marriage of a female guardian.  He denied, however, that the mother, by reason of her marriage, was to be deprived of her child; but, on the contrary, ordered that the mother be at liberty to propose herself, and hoped that her application would be successful.  It is to be observed, that in the exercise of the large and wholesome jurisdiction of the court of chancery of England, that of requiring security from guardians is included.

In 4 Com. Dig. 506, it is said that, "if a wife, being a guardian, (in socage,) die, her husband shall not have it, though he survive."

I think it may be assumed, as fully established, that it is competent, at the common law, for a *feme covert* to execute the office of guardian; and that she may, with the consent of her husband, execute the like office under the provisions of the statute of 1827.

The next question to be determined is, whether such consent was given.  Nothing appears in the case before us, showing any express consent by the husband.  The only fact from which consent may be inferred, is, the execution, by the husband, of the bond required to be given by the guardian before sale of the real estate of the ward.  In the absence of any direct evidence to the contrary, I think this would be sufficient to warrant the presumption that his consent was given.  It is said that administration taken by a wife, during coverture, must be presumed to have been with the assent of the husband.  4 Bac. Abr. 13.  In the case of *Adair* v. *Shaw*, 1 Sch. & Lef. 243, Lord *Redesdale,* in the course of an elaborate and learned opinion, says : " The administration having been taken in this instance during coverture, must unquestionably have

been with the privity and assent of the husband : he must be taken to have authorized the proceedings." The same presumption will obtain in respect to a guardian; as the same reason which warrants the presumption in the one case will warrant it in the other. So that, unless the dissent of the husband expressly appear, his assent will be implied.

2. A further objection made to the validity of the decree of the probate court appointing Archange Simmons guardian, was, that it did not appear, on its face, that the minors were under fourteen years of age, or that they were cited to choose a guardian.

Another point made and which we will consider in connection with the above is, that the circuit court erred in refusing to permit the plaintiffs to prove on the trial, that, at the time of the appointment of said guardian, Thomas Palmer, one of the alleged minors named in the decree, was over fourteen years of age.

In the investigation of these points, I have encountered considerable difficulty, arising principally from the circumstance, that learned judges have differed widely upon the question, how far the proceedings had before courts of probate could be impeached collaterally, and when, and under what circumstances, their decrees are to be deemed and taken as conclusive and binding, until revoked by a revisory court, upon a direct proceeding taken for that purpose.

The importance of the question is not confined to the case or the parties before us, but upon its determination will depend the title to a large part of the real estate in the older counties in this state. This consideration has induced me to give to this part of the case reserved for our advice, a careful and extended examination ; the result of which has been, that if reliance were to be had upon adjudged cases, no satisfactory rule could be extract-

ed, by which the question immediately before us could be determined. A survey of the authorities in several of the states has convinced me, that the law on this subject has undergone more fluctuations than on any other which has fallen within the range of my observation. These fluctu-ations are the more to be deprecated, for the reason that a painful uncertainty must hang over the proceedings of courts of probate, rendering insecure and uncertain, titles to a large amount of property, derived through their orders and decrees. Courts have sometimes struggled hard to sustain titles thus derived, in favor of *bona fide* purcha-sers, against the claims of those who, at the time of the purchase, were minors, but who, through the fraud or neglect of administrators or guardians, have been stripped of their inheritance ; while, on the other hand, barriers erected by the law for the protection of minors, have been as often demolished, to sustain titles in favor of innocent purchasers. The judgments of courts seem, in some in-stances, to have been swayed more by the supposed equi-ties of the case, than by the application of those general rules and principles by which they should have been de-termined.

At the time the decree appointing Archange Simmons guardian was made, two statutes were in force from which the jurisdiction over the appointment of guardians was derived ; both approved on the same day, viz : April 12, 1827. One, entitled " An act establishing Courts of Pro-bate," defined in general terms the jurisdiction of these courts, and granted, *inter alia*, the power of " appointing guardians for minors, idiots and distracted persons," with-out any restriction as to the age of the minors. R. S. 1827, p. 85, § 1. (See ante, p. 435.) The other statute was entitled " An Act empowering the judge of probate to appoint guardians to minors," and authorized the pro-bate court to *appoint* guardians for minors under the age

of *fourteen years;* and to *allow* of guardians chosen by minors of over that age. It further provided, that in case the minor was over fourteen, he should be cited by the judge of probate to choose a guardian; and if, upon being cited, he should refuse to appear, or, when appearing, should refuse to choose a guardian; or, if the person chosen by the minor should be unable to give security, then and in such case, the judge of probate was authorized to appoint a guardian for him. This act certainly contemplated that minors under the age of fourteen years, did not possess the discretion necessary to make choice of a guardian, and therefore conferred the appointment upon the judge of probate; while minors over that age are supposed to possess such discretion. The choice made by a minor over fourteen, was not absolutely binding, however, upon the judge of probate, unless the necessary security was given. The cases in which the judge of probate *might appoint,* without the intervention of the minor, are indicated in the act. But in no case could the authority to *appoint* be exercised, without notice to the minor, except where the minor was over fourteen years of age, or resided without the territory. R. S. 1827, p. 57. (See ante, p. 435, '6.)

It was contended on the argument that the former of these acts authorized the *appointment* of guardians for minors; that the power of choosing granted to the minor by the latter act amounts, in fact, to the privilege of nomination; and that the judge might either " allow," or reject the nomination;—that the power of appointment, in all cases, is conferred upon the judge of probate, which he may exercise without citation; and that such a proceeding, where the minor was over fourteen, might be *irregular,* but is not *void,* as the choice to be made by the minor, is a mere incident in the proceedings, and does not enter into the jurisdiction or authority of the court to ap-

point in all cases under the provisions of the first named act. We think that, although the " act establishing courts of probate" confers the authority, in general terms, upon the court of probate, to appoint guardians, yet, it is to be construed with reference to the second act, which was passed the same day ; and that it was the obvious intention of the legislature, by that act, to restrict and regulate the exercise of this general authority. Suppose the two acts to have been merged in one and the same act ; could it be contended that it conferred upon the probate court the unrestricted power to appoint guardians to minors, irrespective of age, and without notice ? I think it could not be so contended, without doing violence to the words and spirit of the act. How, for instance, could such a construction be reconciled with that part of the act which limits, in express terms, the authority to *appoint ;* as, where the person chosen by the minor refuses to give the required security, or where the minor resides out of the state. But especially would such a construction contravene that provision, which requires notice to be given to the minor, when over fourteen years of age, before any decree can be made affecting his rights.

I am not prepared to say, that if a citation had been issued and served upon the minors, and, upon their appearing, a question as to whether Thomas Palmer was under or over the age of fourteen years had arisen, and the judge of probate, after hearing evidence to that point, had arrived at a wrong conclusion, his decree appointing a guardian would have been void, if, in fact, he was over fourteen years of age. By issuing and serving a citation upon the minor, the probate court would have acquired jurisdiction over the subject matter and the person, and any error of fact committed by him in the exercise of that jurisdiction, might have justified a reversal of the decree upon appeal ; but such error in judgment would not ren-

der void the decree ; nor could it be successfully assailed in a collateral action.   The acts of a guardian, so appointed, would bind until the decree was annulled by appeal to a superior jurisdiction.   The whole fallacy of the argument of the learned counsel consists in supposing, that the mere presentation of the petition, representing all the minors to be under the age of fourteen years, gave jurisdiction to enter the decree appointing a guardian to the minors, whether they were over or under the age of fourteen years ; and that, having jurisdiction, the decree will bind, whether a citation was issued and served or not.

It is a fundamental principle of the common law, founded in justice and sound policy, that no judgment or decree affecting the person or property of an individual shall be valid, unless notice, actual or constructive, is given to the individual whose rights are to be affected.   The exceptions to this general rule, prove the existence of the rule itself.  And this principle is applicable to all courts, whether of superior or inferior jurisdiction.   With respect to superior courts, however, jurisdiction will be presumed until the contrary be shown ; whereas, the jurisdiction of an inferior court must be shown by those claiming rights under their orders or decrees.   Opinion of *Spencer,* J. in *Mills* v. *Martin,* 19 John. R. 33 ; *Borden* v. *Fitch,* 15 Id. 141.

Applying this principle to the case before us, it is clear that nothing appears in the proceedings to show the authority of the probate court to make the order appointing a guardian for a minor over the age of fourteen years. The record furnishes no evidence whatever, that a citation issued, or that any notice of the pendency of the application was given to any of the minors.   By the decree, the custody both of the persons and property of the minors was transferred to the guardian.   It was a decree by which their rights and interests were vitally affected.   The pre-

sentation of the application by Mrs. Simmons, the mother of the plaintiffs, to the judge of probate, gave him full power and authority to inquire into and determine the .question, as to whether the prayer of that petition should be granted or denied.   This, to be sure, is the exercise of jurisdiction ; for it is an authority to hear and determine. The law, however, pointed out the mode by which this authority should be exercised, before a final order or decree should be entered, by which the rights of the minors were to be concluded.   The first step which should have been taken, was, to ascertain whether the authority to *appoint* a guardian existed.   This could only be determined by receiving evidence of the  facts upon  which the right to  appoint  depended.   If the  proceeding  had been conducted  with regularity, a citation  should have  issued to the minors;  this being  served, the parties to be  affected by the  proceeding would  be considered  as  having been brought into court, whether they actually appeared or not. This would  have been a  safe proceeding, although,  perhaps, unnecessary, as respects those of  the minors whose wishes were not  to be consulted  in  the appointment of a guardian.   The return of  the citation *served*, ought to have been followed  by evidence touching the ages  of the minors, respectively ;  upon  this  evidence the judge of probate  was to determine  whether  the power  to  appoint actually existed.   If the  evidence showed, to  his satisfaction, that the minors  were all  under the age  of fourteen years, then his authority to  appoint would be unquestionable ;  but if it manifestly appeared that one of the minors was over the  age of fourteen, then his  jurisdiction in the premises was at an end ;  unless, indeed, the minor failed to appear and make choice of a guardian, in which case the probate court would have possessed full power to appoint, without the intervention of such minor.   If a citation issues and is served, and the minor appears, and ad-

mits that he is under fourteen years of age; or, if the evidence warrants that conclusion, although the fact may be otherwise, yet, the decree will stand good until reversed; and for this reason, that the person to be appointed by the decree is brought into a court competent to hear and determine the facts upon which his authority to enter a final decree depends. If his determination is erroneous, the error must be corrected by a direct proceeding to annul the decree. The error in judgment, of the court by whom the decree is pronounced, cannot impair rights of innocent third persons, acquired through such proceedings. They have a right to rely upon the decree of a court having jurisdiction of the subject matter, and which has acquired jurisdiction of the person affected by the decree.

The case of *Bloom* v. *Burdick*, 1 Hill's R. 130, illustrates and enforces the principle for which I contend. An administrator presented a petition for the sale of the real estate of an intestate, which was granted, and the estate sold. An action of ejectment was subsequently brought by the heirs at law of the deceased, for the real estate sold. The statute of New York requires that guardians should be appointed to take care of the rights of infant heirs who may be interested in the estate. The record of the surrogate did not show the appointment of a guardian to represent the interests of the plaintiffs, who were minors at the time the order for the sale was made. In delivering the opinion of the court, *Bronson*, Justice, remarks: "The surrogate undoubtedly acquired jurisdiction of the subject matter, on the presentation of the petition and account. It was also necessary that he should acquire jurisdiction over the *persons* to be affected by the sale. It is a cardinal principle in the administration of justice, that no man can be condemned, or divested of his right, until he has had the opportunity of being heard. He must, either by serving process, publishing notice, appoint-

ing a guardian, or in some other way, be brought into court; and if judgment is rendered against him before that is done, the proceeding will be as utterly void as though the court had undertaken to act where the subject matter was not within his cognizance." And again: "The surrogate's court is one of inferior jurisdiction; it is a mere creature of the statute. Indeed, it has been held that, in all the cases relating to surrogate's sales, the persons claiming under them, must show affirmatively that the officer had acquired jurisdiction."

In the case of *Jackson* v. *Robinson*, 4 Wend. 436, the lessor of the plaintiff claimed to recover under a deed from an administrator. One of the objections taken to the sufficiency of the evidence to entitle the plaintiff to recover was, that it was not shown, otherwise than by the recitals in the order, that there were any debts of the intestate, that there was a deficiency of assets to pay the same, or that the personal property had been applied to the payment of the debts, and consequently that enough had not been shown to give the surrogate jurisdiction. *Marcy*, Justice, in delivering the opinion of the court, makes use of this language: "After hearing the proofs and allegations of the executors or administrators and others interested in the estate, the surrogate is to examine into and determine the question whether there is sufficient to pay the debts or not; and if he finds that there is not enough for that purpose, he orders a sale. In deciding upon the sufficiency of the assets, he acts judicially, and an error in this matter does not affect his jurisdiction." "He has not only authority, but it his duty to settle that question. If he errs, his determination may be reviewed and reversed on appeal; his proceedings are not void, but voidable only." I cite this case to support the position I have laid down, that, if the judge of probate had jurisdiction of the subject matter, and of the person of the minor,

Thomas Palmer, any error committed by him in determining the question whether he was over or under the age of fourteen years, would not render his proceedings void, but voidable only. The distinction is clear, and recognized in many cases, between proof before a court which is to *give* it jurisdiction, and before a court that already *has* jurisdiction. *Adkins* v. *Brewer*, 3 Cow. 206 ; per *Spencer*, J. in *Van Steenburgh* v. *Kortz*, 10 John. R. 170 ; *Smith* v. *Bouchier*, 2 Str. 993 ; *Jackson* v. *Crawford*, 12 Wend. 533. In the case of *Bigelow* v. *Stearns*, 19 John. R. 42, Chief Justice *Spencer*, in delivering the opinion of the court, said : " I consider the process issued by the defendant as unexceptionable ; it had no seal, and there is nothing in the act requiring it. The constable returned upon it that he had served it by reading. It appeared in evidence that the plaintiff was never before the justice ; that the process was served by reading it to the plaintiff in the presence and hearing of his father, who now prosecutes as guardian *ad litem* to his son. The father requested the constable to delay the return of the process, until the next day at ten o'clock, as he wished to take counsel, and that he would attend before the justice the next day for his son. This conversation took place when the officer served the warrant, and in the plaintiff's hearing and presence, and he did not object to the arrangement. The father appeared with counsel before the justice, and objected to the process and the manner of its being served, and insisted that the plaintiff ought to have been brought personally into court ; these objections were overruled, and the father withdrew with his counsel." " It is evident that the summoning of the accused, was not specifically required ; yet this has been considered a principle so necessary to the impartial administration of justice, that it cannot be dispensed with." And again : " It is no answer to say, that being summoned, he might

appear.    It was the duty of the justice to cause him to be brought before him." This case is a strong one to show that although a court may have jurisdiction of the subject matter, and issues process which is unexceptionable, yet, that its judgments will be held void, unless the person is not only served with the process, but is actually brought before the court, before judgment is rendered.

Applying these principles to the case before us, it will appear that, notwithstanding the probate court had jurisdiction to entertain the petition presented by Mrs. Simmons for the appointment of guardian to her minor children, yet, that it was not competent to pronounce a decree in relation to such of the minors as were over the age of fourteen years, until a citation was issued and served upon them.

It was intimated in argument, that the application itself shows, that all of the minors were under that age, and that this was sufficient to authorize the decree, whatever the fact might be. This argument cannot, I think, be sustained. It would be to make a mere suggestion contained in the petition, unsupported by the oath of the petitioner, or any other proof, conclusive evidence of a fact, upon the determination of which the right to enter a decree appointing a guardian depended. The legal effect of the application, was to give to the court of probate jurisdiction to inquire into the very fact which the application assumed ; but the petition did not, of itself, prove the fact. The decree does not purport to find the fact that the minors were under the age of fourteen years, nor that any citation ever issued, nor that any proof was offered, or evidence heard in relation to that fact.

To sustain further the views I have expressed, upon the point immediately under consideration, I will recur to a few more of the many authorities which were cited upon

the argument, and others which have come under my observation.

In the case of *Chase* v. *Huthaway*, 14 Mass. R. 223, it was held, that the decree of a court of probate appointing a guardian to a person who had been adjudged and certified by the select men of the town in which he resided, to be incapable of taking care of himself, was absolutely *void*, no notice having been given to him before the final adjudication in that court. The statute did not, in terms, require that notice should be given; but the court held, that an opportunity should have been given to the person interested, to be heard in support of his capacity. It was urged in that case, that, as the proceeding was wholly a matter of judicial discretion in the judge of probate, it was to be presumed that every proper measure was adopted by him, before passing the decree; and that notice to a *non compos*, would be of no avail. The court, however, rested the judgment upon the ground, that notice to the party was essential to jurisdiction; and, it not appearing upon the face of the proceedings, or otherwise, that notice was given, they declared the decree null and void; and, to the last proposition upon which the decree was sought to be sustained, the court gave the following conclusive answer: "It has been intimated, that notice to an insane person would be of no avail, because he would be incapable of deriving advantage from it. But the question upon which the whole process turns, is, whether *he is* insane." In that case, the application or petition to the judge of probate gave jurisdiction of the subject matter, precisely as the application did in the case before us. But the court held the decree void, because notice was not given to the party to be affected by the decree, and he was thus deprived of an opportunity of contesting the very fact upon which the right to pass the decree depended. So in the case before us: the failure

to give notice to Thomas Palmer, deprived him of an opportunity to prove the falsity of the suggestion contained in the application, that he was under the age of fourteen years; and which suggestion, if overthrown by competent proof, would have rendered any appointment of guardian, so far as he was concerned, nugatory.

In the case of *Newhall* v. *Sadler*, 16 Mass. R. 122, the facts were, that one Jonathan Newhall died intestate, leaving several children, his heirs at law, to inherit his estate.  A proceeding was had before the probate court with a view to divide the estate among the heirs.  For this purpose, commissioners were appointed by the judge of probate, who appraised the estate, and assigned the whole to the eldest son, being of opinion that the same could not be divided among all the heirs without prejudice to or spoiling the whole ; and they ordered him to pay to the other heirs their several proportions of the appraised value of the estate—the sum to be paid to the demandant being $217.53, within three years, with interest annually.  The doings of the commissioners were approved by the judge of probate ; and, by his decree, the whole of the estate was assigned to the eldest son, " upon condition that he should pay to the other children of said deceased, or to their lawful representatives, the several sums of money, at the time and with the interest, as ordered in said return of said commissioners."  No security was ordered to be given to the heirs, and none in fact was given.  Hetty Newhall, the demandant, disregarding the decree of the probate court, brought a writ of entry to recover seizin and possession of her share of the real estate inherited from her father.  The supreme court directed a recovery, on the ground that the judge of probate had no authority to pass a decree until the money was actually paid to the demandant, or good security given for its payment as required by the statute.  The jurisdic-

tion of the probate court over the subject matter was un-questionable; his authority to issue a warrant to commis-sioners, was equally clear; but his authority to enter a decree assigning to the eldest son the whole of the estate was denied, because payment was not made, nor security given as required by law.

We have been referred to the case of *Loring, Adm'r* v. *Steineman*, 1 Metc. 204, as supporting the views of the counsel on the part of the defendant, in respect to the con-clusiveness of the decree of the judge of probate. I have carefully examined that case, and do not find that it mili-tates against or overrules other cases to be found in the Massachusetts Reports, some of which have been referred to in this opinion. On the contrary, both the reasoning decision of the court in that case, tend to confirm the views I have endeavored to sustain. The language of the Chief Justice in one part of the opinion, is as follows: " We can entertain no doubt that the judgment of a pro-bate court, duly made, after such notice as the statutes require, or if they require no notice, then after such no-tice as the court, in its discretion, acting upon the circum-stances of the case, may think proper to order, must be deemed in its nature so far conclusive, as to protect an administrator, acting in good faith, in conforming to it." But it is sufficient to say of that case, that the court liken-ed the proceeding had before the court of probate, to pro-ceedings in courts of admiralty, where persons are only incidentally concerned.

In the case of *Heath* v. *Wells*, 5 Pick. R. 140, it was held, that a license granted to an administrator to sell real estate of a deceased person, to pay a debt barred by the statute of limitations respecting executors and adminis-trators, was void. After reviewing some of the previous decisions in Massachusetts respecting the conclusive na-ture of decrees made by the probate court, Mr. Justice

*Wild* says: "But in the case under consideration, it appears that the court granting license to the administrator had no jurisdiction of the subject matter; for if the administrator had no right to sell, the estate not being assets in his hands, the court had no cognizance of the case, and the license was merely void. It was not a case for deliberation or decision." And yet, if the views of counsel were fully understood, and reliance is to be had upon some of the cases which seem to favor these views, the decision of the supreme court of Massachusetts was erroneous. These views, upon the case cited, would be, that over the whole subject of granting license to administrators to sell real estate, the probate court of Massachusetts had jurisdiction; the presentation of a petition for the sale of real estate, representing that the personal property was insufficient to pay the demands against the estate, called this jurisdiction into exercise; and a decree directing a sale, involved the question as to the existence of demands against the estate and the sufficiency of personal assets to pay them, and hence such a decree of sale would be valid, although in point of fact no debts existed. But it is apprehended that this view cannot be sustained. The proceedings are not, strictly speaking, *in rem.* There are adversary parties. By such a decree and sale, heirs may become divested of their inheritance; devisees may be divested of rights under a will; and yet, it would be contended that there is no remedy for the mischief, except by appeal, when, perhaps, neither heirs nor devisees had notice of the proceeding. I think the views of the supreme court of Massachusetts, when they assert, that where there are no debts, the real estate never becomes assets in the hands of the administrator, and he cannot therefore sell, must prevail, and that a decree without the existence of a fact upon which to base it, must be void.

The case of *Perkins* v. *Fairfield,* 11 Mass. R. 227, is

distinguishable from the case of *Heath* v. *Wells*. In the former case, says Mr. Justice *Wilde*, " the estate had been represented insolvent, and the certificate of the judge of probate was founded on the list of claims allowed by the commissioners. One of these had been afterwards reduced by a trial at law, so that the proceeds of the real estate exceeded the amount of claims thus reduced, and the attempt was, to set aside the sale as void, on account of this excess. But the sale was held valid." The distinction consisted in this; that in the case of *Heath* v. *Wells*, there were no debts, and therefore there was nothing upon which a decree of sale could be founded; in the case of *Perkins* v. *Fairfield*, there were debts, and therefore the necessary facts existed to authorize a decree of sale. In the first case there was no jurisdiction; in the latter case there was jurisdiction, but it was improvidently exercised.

In *Holyoke* v. *Haskins*, 5 Pick, R. 20, administration granted by the judge of probate of Suffolk, on the estate of a person, whose domicil at the time of her death was in Middlesex, was held void, for want of jurisdiction. It might have been said in that case, as in this, that the residence of the deceased was involved in the question as to whether an administrator should be appointed, and consequently the decree was not absolutely void, but merely voidable.

We have been referred by counsel to the case of the *United States* v. *Arredondo*, 6 Pet. R. 709, for a definition of the word jurisdiction. Mr. Justice *Baldwin*, in that case says: " The power to hear and determine a cause is jurisdiction; it is " *coram judice*," whenever a case is presented which brings this power into action; if the petitioner states such a case in his petition, that, on demurrer, the court could render judgment in his favor, it is an undoubted case of jurisdiction." With this definition I

am not disposed to find fault; and yet, I am unable to see that it renders conclusive the decree of the judge of probate appointing Mrs. Simmons guardian of Thomas Palmer. Let us apply the definition and illustration given by Judge *Baldwin* to the facts as they appear before us. The jurisdiction of the court of probate to grant letters of guardianship is expressly given by statute. The petition of Mrs. Simmons presented facts which called this jurisdiction into exercise. It gave to the probate court power to hear and determine. Suppose a citation had been issued and served upon Thomas Palmer, and upon his appearing in court, he had interposed an answer to the petition, affirming that he was over fourteen years of age ; and to this answer a demurrer had been interposed by the petitioner; what, it may be asked, would have been the judgment of the probate court? Clearly, that the petition, as to him, must be dismissed ; for the reason, that there was an admission of record, which ousted the court of jurisdiction; an admission which, in point of fact, showed that it never had jurisdiction to pass a decree. But suppose the facts to have existed as they are presented by the record. We have an application from Mrs. Simmons to be appointed guardian to her minor children, who, it was *suggested*, (not averred,) were under the age of fourteen years. Then follows the decree of the probate court, granting the prayer contained in the petition. No citation issues ; no evidence appears to have been taken. No fact is found by the court. Yet, is it insisted, that a decree thus made, is conclusive upon Thomas Palmer, because the petition presented a case for the exercise of the jurisdiction conferred upon the probate court, although the fact was that that court never had jurisdiction to pass the decree. If Thomas Palmer is bound by such a decree, although no notice was ever served upon him, and no opportunity ever afforded him to deny the

facts it contained, then would he be bound, although he may have attained the age of twenty-one years; for the same course of reasoning which would sustain the validity of the decree in case he was fifteen years of age, would sustain it although he was in fact twenty-one years of age. It is admitted, however, that if a citation had issued and been served on Thomas Palmer, and upon thus obtaining jurisdiction of the person whose interests were involved, he had demurred to the petition, thus admitting the facts therein stated, the judgment upon the demurrer, in favor of the petitioner, would have been conclusive. The same effect, I have already stated, would be given to the decree, had he appeared, and, by plea and answer, denied the facts contained in the petition.

But it is said that the only remedy in such a case is by appeal. It is very true, that when an appeal is given by statute from the judgment of any court, the party aggrieved must avail himself of the remedy which the statute provides. *Putnam* v. *Churchill*, 4 Mass. R. 517. In the case before us, for aught that appears, Thomas Palmer never had notice of the pendency of the proceedings in the probate court, and that court never obtained jurisdiction over the person; the proceedings were *ex parte;* and thus, without any fault on his part, the opportunity for appealing was lost. Under such circumstances, it would seem extraordinary to urge that he was forever concluded, because he did not avail himself of his remedy by appeal.

The right to impeach a decree thus rendered, in a collateral action, is fully recognized in the case of *Smith* v. *Rice*, 11 Mass. R. 507. In that case, the court say: "If it appear that the judge of probate has exceeded his authority; or that he has undertaken to determine upon the rights of parties, over whom he has no jurisdiction; whether the want of jurisdiction arise from their not being duly notified, not regularly before him, or from any other cause;

Palmer *v.* Oakley.

or that he has proceeded in a cause expressly prohibited by law; in all such cases, the party aggrieved, if, without any *laches* on his part he has had no opportunity to appeal, may consider the act or decree void."

The comments made upon the case of the *United States* v. *Arredondo,* will apply to the case of *The State of Rhode Island* v. *The State of Massachusetts,* 12 Pet. R. 657. It is said in the latter case, (p. 718,) that "jurisdiction is the power to hear and determine the subject matter in controversy between parties to a suit; to adjudicate, or exercise any judicial power over them." And again: "If the law confers the power to render a judgment or decree, then the court has jurisdiction; what shall be adjudged or decreed between the parties, and with which is the right of the case, is judicial action, by hearing and determining it." Admitting, in their fullest extent, the correctness of these propositions, it is quite obvious that the power to hear and determine the subject matter in controversy between parties to a suit, necessarily implies that the parties have been regularly brought into court; and if they have not, then the law does not confer the power to render a judgment or decree. In *Grignon's Lessees* v. *Astor,* 2 How. 319, Mr. Justice *Baldwin,* in referring to his definition of jurisdiction as given in the two cases last referred to, says: " This is the line which denotes jurisdiction and its exercise, in cases *in personam;* where there are adverse parties, the court must have power over the subject matter and the parties." The supreme court of the United States, in that case, decide, that, in a proceeding to sell the real estate of an indebted intestate, there are no adversary parties; that the proceedings are *in rem,* the administrator representing the land; and that all the facts necessary to give jurisdiction to the county court who decreed a sale, having been sufficiently shown, that decree was to be held conclusive upon all persons interested. If

the proceedings were strictly *in rem*, (which is neither denied or affirmed,) then the judgment of the supreme *court* can be easily sustained ; if not, then it would be difficult to reconcile it with numerous reported cases relating to the same subject.

I have given to the two leading cases decided by the supreme court of the United States, and so much relied upon by counsel, a very careful and critical examination ; and without questioning the correctness of the conclusion to which the court arrived in those cases, I am bound to declare, that the judge by whom the opinions were delivered, asserted principles which are at war with the opinions of judges and jurists, who have done much to illustrate the jurisprudence of this country; and which, if correct to the extent warranted by the language in which they are announced, conflict with the views of that court, at an earlier period of its existence.   In the case of *Rose* v. *Himely*, 4 Cranch, 241, Chief Justice *Marshall*, uses this strong and clear language :  " The court pronouncing the sentence, of necessity, decided in favor of its jurisdiction ; and if the decision was erroneous, that error, it is said, ought to be corrected by the superior tribunals of its own country."  " This proposition certainly cannot be admitted in its full extent.   A sentence, professing on its face, to be the sentence of a judicial tribunal, if rendered by a self-constituted body, or by a body not empowered by its government to take cognizance of the subject it had decided, could have no legal effect whatever."  " The power under which it acts, must be looked into ; and its authority to decide questions which it professes to decide, must be considered."  " But, although the general power by which a court takes jurisdiction of causes must be inspected, in order to determine whether it may rightfully do what it professes to do, it is still a question of serious difficulty, whether the situation of the particlar thing on which the sentence has

passed may be inquired into, for the purpose of deciding whether that thing was in a state which subjected it to the jurisdiction of the court passing the sentence.  For example, in every case of a foreign sentence condemning a vessel as a prize of war, the authority of the tribunal to act as a prize court, must be examinable.   Is the question whether the vessel condemned is in a situation to subject her to the jurisdiction of that court, also examinable?  This question, in the opinion of the court, must be answered in the affirmative."   " Upon principle, it would seem that the operation of every judgment must depend upon the power of the court to render that judgment."

In the case of *Elliot* v. *Piersol*, 1 Pet. R. 328, the court hold this language :  " Where a court has jurisdiction, it has a right to decide every question which occurs in the cause ; and whether its decision be correct or otherwise, its judgment, until reversed, is regarded as binding in every other court.   But if it act without authority, its judgments and orders are regarded as nullities."   And again: " This distinction runs through all the cases on the subject ; and it proves that the jurisdiction of any court exercising authority over a subject, may be inquired into in every court where the proceedings of the former are relied on and brought before the latter, by the party claiming the benefit of such proceedings."   It would certainly be difficult to reconcile these views, which are so fully sustained by a long train of decisions both in England and in this country, with the opinions of the distinguished judge in the case of *Grignon's Lessees* v. *Astor*, and also in *United States Bank* v. *Voorhies*, 10 Pet. R. 449.

In the case of *Perry* v. *Brainard*, 11 Ohio, 442, it was held, that the county court were not authorized to appoint a guardian to a female over twelve years of age, unless she refused to appear and make choice of one, after notice to her for that purpose.

In the case of *Demming* v. *Corwin*, 11 Wend. 647, the supreme court of New York, in a collateral action, held that a judgment in partition was void, where the record did not show that notice was given to unknown owners.

In *Clark* v. *Holmes*, 1 Dougl. Mich. R. 390, this court, after a careful review of the authorities, held, that courts of special and limited jurisdiction, when proceeding to exercise the powers conferred, must have jurisdiction of the person, by means of the proper process or appearance of the party, as well as of the subject matter of the suit ; and that where they have no such jurisdiction of the cause or person, their proceedings are absolutely void. And in the conclusion of the opinion in that case, Mr. Justice *Goodwin* said : " As far as authorities have come under my view, it would seem that the jurisdiction of special inferior tribunals, at least, may be inquired into in respect to their authority over the person, as well as the subject matter ; and the want of jurisdiction may be shown by evidence, even when it tends to contradict the minutes or dockets which those tribunals may keep as records of their proceedings." It is unnecessary to go so far in the case before us, or to affirm, that the rule as laid down, is applicable to the records of the probate court, inasmuch as it no where appears that a citation issued, or that jurisdiction was obtained over the person of Thomas Palmer.

A brief reference to one or two other cases will conclude my review of the many authorities cited by counsel in argument. *Brittain* v. *Kinnaird*, 5 E. C. L. R. 137, was strongly relied upon to uphold the decree of the probate court. A careful examination of that case, however, will show the grounds upon which the court held the conviction in the inferior court conclusive. A new trial was moved, for the reason that the magistrate had, by the act under which the proceedings were instituted, no power to

take any thing but a *boat;* that he had no right to assume to himself a jurisdiction, by calling that a *boat*, which was in truth a *vessel.* In opposition to the motion it was insisted that, whether the subject matter of the conviction were a boat or not, was the very question to be decided before the magistrate, and upon which his decision was final. The reason for the judgment of the court in refusing a new trial will appear in a few extracts from the opinions of the judges. *Dallas*, C. J. remarked : "Now allowing, for the sake of argument, that *boat* is a word of technical meaning, and somewhat different from a vessel; still, it was matter of fact to be made out before the magistrate, *and on which he was to draw his own conclusion."—Parke*, J. : "In the present case, the whole argument has turned on that, which, under the circumstances, it was impossible to give in evidence, namely, that the vessel in question was not a boat ; but supposing that this point might have been entered into at the trial, has any thing been stated to show that the vessel was not a boat ?   Upon such point as this, dictionaries are certainly very good authority, and Dr. Johnson calls a boat, a ship of small size," &c.—*Richardson*, J. :  " Whether the vessel in question were a boat or no, was a fact on which the magistrate was to decide," &c.—The Chief Justice, referring to the case of *Welsh* v. *Nash*, 8 East. 394, spoke of it as an *ex parte* order of justices ; " a proceeding in no way resembling a conviction, where the matter is investigated on oath, in the presence of both parties." These brief extracts, show very clearly the distinction between that case and the one before us.   The magistrates were authorized to seize, under certain circumstances, boats in the river Thames.   A vessel was seized, which, it was insisted, was not a *boat*, within the meaning of the act of 2 Geo. III.   A trial was had in presence of both parties, and evidence heard ; after which it became necessary for the magistrates to ex-

ercise a judicial discretion—to decide judicially, whether, under the evidence, the vessel seized was a boat within the meaning of the act. In the case before us, the proceedings were *ex parte ;* the order was *ex parte ;* and the court pronouncing the order had no jurisdiction over the person upon whom it was to operate, either by citation issued and served, or by voluntary appearance.

In *Ackerly* v. *Parkinson,* 3 Maule & Selw. 425, the party appeared, although the citation was defective in some formal particulars. This fact distinguishes that case from the present.

But I am admonished by the length to which this opinion has been drawn out, to bring to a close the discussion of this important feature of the case before us. I have bestowed upon it much labor and consideration, and the conclusion to which I have arrived, is, that it was competent for the court below to receive evidence that Thomas Palmer was, at the time the order was granted appointing a guardian, over the age of fourteen years, unless it shall further appear that he had legal notice of the proceedings ; in which case the evidence would be incompetent.

From what I have had occasion to say on this branch of the case, and especially from a view of the authorities cited, my views of the other branch of the proposition I have been considering, will have been anticipated. It is very true that the record of the probate court is, in some respects, informal ; nevertheless, I think the decree is sufficient to bind such of the plaintiffs as were under the age of fourteen years ; and that a formal finding of the fact that they were under fourteen, was not necessary to be inserted in the decree, to render it valid. We must intend that the probate court had sufficient evidence of the facts upon which the decree was founded. That evidence it was not necessary to spread out upon the record. All

that was necessary was to enter the decree, which we must presume was justified by the evidence before the court. *Dubois* v. *Dubois,* 6 Cow. 496 ; 5 Mason, 335.

It was suggested in argument, that if no citation in fact issued to Thomas Palmer, and if, in point of fact, he had no notice of the pendency of the proceedings, yet, from the relation in which he stood to the guardian who was appointed, and from the circumstance that he lived with her for several years, and received his proportion of the money arising from the sale, he would be considered as acquiescing in the appointment. No such facts appear in the case before us, and we therefore express no opinion as to the effect of such evidence when it shall be produced.

3. Another objection was, that the deed of the guardian was void because the husband did not join in its execution. To this we answer, that it was not necessary that the husband should join. This follows from what we have already said upon the first point presented in the case made. Besides, it is quite clear that the husband had no interest in the premises conveyed ; his execution of the deed, therefore, was unnecessary. On the part of the wife it was the mere execution of an authority in which neither she nor her husband had any beneficial interest.

4. The last objection to the regularity of the proceedings by the guardian in conducting the sale is, that the notice of sale given was insufficient, and was given before the bond was executed.

The statute requires, that, before making sale of any real estate by a guardian, a bond shall be given with sureties, and thirty days' notice of the intended sale. (See ante, pp. 437, '8.) An oath is also required. (See ante, p. 440. § 18.) The requirement in respect to the bond and notice, is contained in a proviso, and may be considered is a limitation or restriction upon the authority

to sell. But does the neglect on the part of the guardian *to comply with these several provisions of the statute,* render the sale absolutely *void*, and can it affect the rights of an innocent *bona fide* purchaser, claiming through the decree authorizing the sale. I think the rights of such a purchaser, especially after the lapse of so many years, are not to be disturbed in consequence of the failure of the guardian to perform acts *in pais*, subsequent to the decree of sale. The acts of the guardian are, in legal contemplation, the acts of the ward, whom he represents; and it cannot now be permitted to the ward to come in and allege the non-feasance of his guardian, to disturb a title derived from him, through such his legally constituted representative. All that a purchaser at a judicial sale is bound to look to with a view to his protection, is, to see that the court by whom the sale was authorized, was empowered to make the decree. If the court had the power, the failure of the guardian, as in this case, to fulfil certain directions which the law imposed on her, should not, and cannot prejudice the rights acquired by such purchaser. If the ward is prejudiced by any neglect on the part of the guardian in the execution of the trust reposed in her, his remedy is upon her bond. It never could have been contemplated by the legislature, that the validity of a sale should be made to depend upon the observance of those provisions of the law, which are in their nature *directory* to the guardian. If such a rule were to obtain, but few purchasers would be found at judicial sales; for but few would incur the hazard of purchasing and paying their money, when the purchase so made, may, at the distance of ten or fifteen years, be held void, in consequence of a non-compliance by a guardian with the requisitions of the statute. Such a rule would also operate injuriously on the ward, as, upon every sale made, the purchaser would take into the ac-

Palmer v. Oakley.

count the hazard he incurs.    The best interests of in-
fants require, that no unnecessary obstacles should be
thrown in the way of obtaining the best possible price for
their estates, when sold.    If a wrong is done them by
their guardians, they have a full and ample remedy.    In
the case of *Perkins* v. *Fairfield*, 11 Mass. R. 226, it was
held that a failure, by an administrator, to give the bond
required by the act of Massachusetts of 1783, before the
sale of real estate of his intestate, would not invalidate
a title derived through such administrator.    The views I
have expressed are also fully sustained in an able and
conclusive opinion, delivered by Mr. Justice *Hitchcock*, in
the case of *Stall's Lessee* v. *Macalester*, 9 Ohio R. 19.
And it has been held that a sale made by an administra-
tor, under like circumstances, would protect an innocent
purchaser.    *Ludlow's heirs* v. *Johnson*, 3 Ohio R. 553.
Counsel referred us to the case of *Williams* v. *Reed*, 5 Pick.
R. 480, to show that a failure on the part of the guardian
to take the oath and give the bond required by law, would
render a sale void.    The case does not sustain the propo-
sition.    The language of Chief Justice *Parker* was as fol-
lows :    " There being then no bond, and no oath, the sale
is void, or at least *voidable*, so that the parties to it were
at liberty to vacate it, and consider it as annulled."    Our
statute was borrowed from that of Massachusetts ; and,
in adopting it here, we are disposed also to adopt the
practical construction it has received in the courts of that
state ; especially, when that construction seems consist-
ent with sound policy, and is justified by construing the
section in question, with reference to other sections of the
same statute.

*Ordered certified*, that, as to Thomas Palmer, one of the
plaintiffs, the motion for a new trial should be *granted ;*
but that, as to the other plaintiffs, it should be *denied ;* and
that the defendant, as to them, was entitled to judgment.